# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2132

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United |
| v. | * | States District Court for the |
| | * | Northern District of Iowa. |
| Charles John Leppert, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 15, 2004
Filed: May 20, 2005

_____

Before LOKEN, Chief Judge, and MORRIS SHEPPARD ARNOLD and RILEY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After the district court[1] denied his motion to suppress, Charles Leppert entered a conditional plea of guilty to being an unlawful user of methamphetamine in possession of a firearm. *See* 18 U.S.C. §§ 922(g)(3), 924(a)(2). He appeals,

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, adopting the report and recommendations of the Honorable John A. Jarvey, Chief Magistrate Judge, United States District Court for the Northern District of Iowa. *See* 28 U.S.C. § 636(b)(1)(B).

contending that the district court should have granted his suppression motion because the warrant underlying the search was obtained without probable cause. We affirm.

## I.

The police in Dubuque, Iowa, applied for and obtained a warrant to search a residence at 2618 Central Avenue for methamphetamine, chemicals and equipment used to make methamphetamine, and firearms. Sergeant Gregory Egan of the Dubuque Drug Task Force signed an affidavit in support of the application, in which he attested as follows:

At about 11:00 p.m., Sergeant Egan met with an informant, Robert Gretillat, at the county jail following Mr. Gretillat's arrest for a probation violation. Mr. Gretillat told Sergeant Egan that he was "currently residing" at the Central Avenue address with Melissa Altman and an individual whom he knew only as "Chuck." Mr. Gretillat described Chuck, and at the end of the interview he identified a photograph of Mr. Leppert as Chuck, an individual with whom he had been living for the past month. According to Mr. Gretillat, Jodi Riesdorf also lived at the residence until her recent arrest, and the lease for the property was in the names of her parents.

Mr. Gretillat also told Sergeant Egan that Chuck had cooked methamphetamine in the basement of the Central Avenue residence about 2:00 p.m. that afternoon. Because the methamphetamine had not turned out properly, Mr. Gretillat expected Chuck to try to cook again that night. Mr. Gretillat named specific chemicals and equipment for cooking methamphetamine that he had observed in the basement of the residence that day. He added that Chuck manufactured methamphetamine by using red phosphorous obtained from the striker plates of matchbooks and that he (Mr. Gretillat) helped to remove the phosphorous by first soaking the striker plates in paint thinner.

In addition, Mr. Gretillat said that a .380 pistol was in the residence: He had seen the gun in Chuck's waistband that afternoon while Chuck was cooking methamphetamine; the gun was black, with a clip, and was from Italy. Mr. Gretillat also said that he had seen a 12-gauge sawed-off shotgun at the residence. He had first seen the shotgun about six weeks earlier, and he last saw it shortly after Chuck and Ms. Altman obtained it from Ms. Riesdorf for one-half gram of methamphetamine.

The application for a warrant also included information from a confidential informant (CI), whom an investigator had spoken to nine days before Sergeant Egan talked to Mr. Gretillat. The CI said that he had once seen John Fuller with a sawed-off shotgun and Jody [sic] Riesdorf with a smaller sawed-off shotgun. According to the CI, Mr. Fuller had "sold" the larger shotgun to two individuals named Chuck and Melissa for one-half gram of methamphetamine, and Chuck and Melissa were "resid[ing] with" Ms. Riesdorf. An attachment to the warrant application described the CI as having a reputation for truthfulness and "no motivation to falsify the information." The CI had "been an active informant" for the drug force for ten years, and had "made several undercover narcotics purchases that ... resulted in successful prosecution of numerous cases in the Dubuque area."

## II.

The facts are not in dispute, and we review *de novo* the district court's legal conclusions, *United States v. Briones*, 390 F.3d 610, 612 (8th Cir. 2004). Under the fourth amendment, warrants may issue only upon "probable cause," U.S. Const. amend. IV, which is present when there is a "fair probability that contraband or evidence of a crime will be found in a particular place," *Illinois v. Gates,* 462 U.S. 213, 238 (1983); *see United States v. Riedesel*, 987 F.2d 1383, 1390 (8th Cir. 1993). Before issuing a warrant, a magistrate must determine based on the totality of the circumstances that probable cause exists, *Gates*, 462 U.S. at 230, and if the magistrate had a "substantial basis" for that determination both the district court and this court must uphold it, *id.* at 236-37.

Mr. Leppert contends that the state magistrate's probable cause finding cannot be upheld because it was based on Mr. Gretillat's statements, which were not shown to be reliable. In addition, according to Mr. Leppert, the magistrate was presented with evidence that showed as a matter of law that Mr. Gretillat was an unreliable informant.

Contrary to Mr. Leppert's first assertion, we believe that ample evidence supported the reliability of Mr. Gretillat's statements. An informant's tip may be sufficiently reliable to support a probable-cause determination if the informant has previously provided reliable information or if the tip is "corroborated by independent evidence." *See United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993). Here the CI gave reliable information in the past that resulted in numerous successful prosecutions, and some of Mr. Gretillat's statements were corroborated by statements of the reliable CI. Mr. Leppert argues that the police, rather than another informant, must corroborate the statements of an untested informant. But we have said that information provided by one informant may be "corroborated with specific, consistent details provided by [a] second informant," and that, in fact, the tips of two informants may be "reciprocally corroborative, rendering their information enough to support a finding of probable cause." *United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir.1998) (citing *United States v. Jackson*, 67 F.3d 1359, 1365 (8th Cir.1995), *cert. denied*, 517 U.S. 1192 (1996)).

Here the reliable CI said that individuals named Chuck and Melissa lived at Ms. Riesdorf's residence. This statement corroborates Mr. Gretillat's statement nine days later that Chuck and Melissa Altman lived where Ms. Riesdorf had resided until her recent arrest, and that the residence was leased in her parents' names. We note, moreover, that both the CI and Mr. Gretillat stated that Chuck and Melissa had obtained a sawed-off shotgun in exchange for one-half gram of methamphetamine. Although Mr. Gretillat said that the gun came from Ms. Riesdorf and the CI said that it came from Mr. Fuller, the CI did state that he had once seen Ms. Riesdorf with a

-4-

sawed-off shotgun. *Cf. Gates*, 462 U.S. at 246 n.14. An "informant who is correct about some things more likely will be correct about critical unverified facts," and thus we believe that the cross-corroboration of some details of the statements of Mr. Gretillat and the CI supports the reliability of Mr. Gretillat's statements as a whole. *Cf. United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986).

In addition, we note that Mr. Gretillat provided a detailed description of the methamphetamine operation based on what he said were his firsthand observations of recent activities. As the Supreme Court has noted, the "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the] tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234; *see also United States v. Jackson*, 898 F.2d 79, 81 (8th Cir. 1990). Also, we have held that an informant's statement against his or her own penal interests (even if others are also implicated) is presumptively credible, and here Mr. Gretillat admitted to having assisted in making methamphetamine. *See United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001); *see also United States v. Harris*, 403 U.S. 573, 583-84 (1971) (plurality opinion). We reject Mr. Leppert's contention that the harm to Mr. Gretillat's own penal interests does not enhance his credibility because he incriminated others. For this argument, Mr. Leppert relies on the plurality opinion in *Lilly v. Virginia*, 527 U.S. 116, 138-39 (1999), which indicates that the sixth amendment's confrontation clause may be violated if hearsay statements that inculpate an accused are admitted at trial, even if the statements are also self-incriminating. But, unlike criminal convictions, probable-cause determinations generally may be based on hearsay. *See Franks v. Delaware*, 438 U.S. 154, 165 (1978). We believe, moreover, that *Tyler* holds simply that statements against the informant's own penal interests (not against the interests of others) are presumptively credible, and we think that Mr. Gretillat's statement that he helped to make the methamphetamine "carr[ies] considerable weight" in supporting a finding of probable cause to search the location where he admitted to committing that crime.

*See United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996); *see also Harris*, 403 U.S. at 584 (plurality opinion).

We also reject Mr. Leppert's contention that the evidence presented to the magistrate showed as a matter of law that Mr. Gretillat was unreliable because he had at least one prior conviction, had violated his probation, and was in custody for another crime when he spoke to Sergeant Egan. Although his previous (unspecified) crime and subsequent arrest do not enhance Mr. Gretillat's credibility, many informants have prior convictions, and Mr. Gretillat's statements need not have been beyond any doubt to support a "fair probability" (not a certainty) that contraband would be found at the Central Avenue address, *see Reivich*, 793 F.2d at 960. Finally, Mr. Leppert contends that even the officers themselves must have doubted Mr. Gretillat's credibility because they did not ask him for permission to search the Central Avenue residence, although he had told Sergeant Egan that he lived there. We believe, however, that it was reasonable for the police to obtain a search warrant, for which the fourth amendment expresses a "strong preference," *Gates*, 462 U.S. at 236, rather than trying to get consent for a warrantless search from Mr. Gretillat, who admittedly was not even a lessee of the premises.

## III.

We conclude that substantial evidence supported the magistrate's finding of probable cause for issuance of the warrant, and therefore we affirm the district court's order denying Mr. Leppert's motion to suppress.

_____