# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2203

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Antonio Harris, | * | |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted: December 9, 2008
Filed: March 12, 2009

_____

Before LOKEN, Chief Judge, BEAM and ARNOLD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Antonio Harris was convicted of possessing over fifty grams of cocaine base (crack) with intent to distribute it, *see* 21 U.S.C. § 841(a)(1). On appeal, Mr. Harris maintains that the district court[1] should have granted his suppression motion and that the court erred in two of its evidentiary rulings. We affirm.

---

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

## I.

When Mr. Harris moved to suppress the weapon and drugs seized at his apartment on the ground that the warrant authorizing the search that produced them was not supported by probable cause, the district court denied the motion. We review *de novo* a district court's conclusion that there was a substantial basis for a magistrate's determination of probable cause. *See United States v. Leppert*, 408 F.3d 1039, 1041 (8th Cir. 2005). Probable cause exists where attendant circumstances indicate that there is " 'a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The affidavit of Detective Leo Liston, which was offered in support of the warrant application, stated that a confidential informant told him that a man calling himself Bones was selling crack and marijuana out of an apartment. According to the affidavit, the informant advised Detective Liston that he had seen drugs inside Bones's apartment and he provided the address where Bones lived and a description of Bones and of the car that he drove. The informant later identified Bones as Mr. Harris. Detective Liston attested that he engaged in an independent investigation that confirmed the information provided to the extent that it could be confirmed. The detective further explained in his affidavit that the confidential informant was reliable because the informant had previously provided information that led to an arrest. An informant is sufficiently reliable if the informant has provided reliable information in the past or if details from the informant are independently corroborated. *See United States v. Leppert*, 408 F.3d 1039, 1041 (8th Cir. 2005). Taken together, the facts recited in support of the warrant application made it fairly probable that drugs would be found in the apartment. *Cf. United States v. Vinson*, 414 F.3d. 924, 930 (8th Cir. 2005). We therefore affirm the denial of Mr. Harris's motion to suppress.

## II.

Mr. Harris maintains that the district court erred by allowing Julie Hancock, his probation officer at the time of trial, to testify to the contents of his probation file. During the trial, Mr. Harris, in an effort to establish that Detective Liston had planted the drugs seized in his apartment, testified that the detective had harassed him on three separate occasions and that he (Mr. Harris) notified Kelly Wilkins, who was his probation officer at the time, each time he had such an encounter as he was required to do. Ms. Hancock testified that Mr. Harris's probation file, which Ms. Wilkins maintained during the time period in question, did not contain any notations indicating that Mr. Harris had made any calls to Ms. Wilkins or notified her of any supposed harassment.

Mr. Harris argues first that Ms. Hancock's testimony was inadmissible hearsay under Fed. R. Evid. 803(8)(B). That rule sets out what is often referred to as the public records exception to the hearsay rule, *see United States v. Brown*, 315 F.3d 929, 931 (8th Cir. 2003), and permits the admission of records of public offices or agencies "setting forth ... matters observed pursuant to duty imposed by law" and for which "there was a duty to report," Fed. R. Evid. 803(8)(B). But Rule 803(8)(B) specifically retains the hearsay objection "in criminal cases" for "matters observed by police officers and other law enforcement personnel," and it is this portion of the rule that Mr. Harris directs our attention to. Though this provision, read expansively, might seem to prohibit the admission of the testimony regarding the contents of the probation file, we conclude that it does not.

In the first place, we have held that 803(8)(B) "does not bar the admission of all law enforcement agency records," *United States v. Edelmann*, 458 F.3d 791, 813 (8th Cir. 2006); *United States v. Brown*, 315 F.3d 929, 931 (8th Cir. 2003). While it does prohibit the admission of records that contain opinions or conclusions resulting from criminal investigations, it does not bar the admission of records concerning routine and unambiguous factual matters. *See Edelmann*, 458 F.3d at 813.

Ms. Hancock's testimony was offered for the purpose of ascertaining what Mr. Harris told Ms. Wilkins, something that involves a routine and unambiguous factual notation and not an opinion, a finding of fact, or a conclusion. *See id*. Thus, even if Rule 803(8)(B) were applicable here, it would not bar Ms. Hancock's testimony.

More to the point, it is Fed. R. Evid. 803(10) that is relevant here because Ms. Hancock's testimony was not offered to show what was in Mr. Harris's file; it was offered to show what was not in it. Rule 803(10) allows for admission of testimony that "a diligent search failed to disclose [a] record" to prove the "nonexistence of a matter" where a record of such a matter would have been "regularly made and preserved by a public office or agency." Ms. Hancock testified, in part, that it was normal policy for probation officers to make an entry in a probationer's file for each contact with the probationer, and there were no notations in Mr. Harris's file indicating that Mr. Harris had contacted Ms. Wilkins. Ms. Hancock's testimony was therefore admissible to prove that Mr. Harris did not tell Ms. Williams about any alleged police harassment.

Mr. Harris also maintains that the admission of Ms. Hancock's testimony violated his confrontation rights because he could not cross-examine Ms. Wilkins about the contents of his file. *See Greer v. Minnesota*, 493 F.3d 952, 958 (8th Cir. 2007). We do not reach the merits of this argument because we think that any error in the admission of the testimony was harmless beyond a reasonable doubt. *See United States v. No Neck*, 472 F.3d 1048, 1054 (8th Cir. 2007). The question is whether "the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Id.* (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)) (emphasis in original). After Ms. Hancock testified, the parties spoke on the phone with Ms. Wilkins and agreed to a stipulation that if called as a witness Ms. Wilkins would have testified that she did not recall Mr. Harris telling her that he had had contact with a police officer, but that if Mr. Harris had told her about any such encounter she would not necessarily have noted that fact in her file. This stipulation was read to the jury.

Given Ms. Wilkins's admission, we cannot see any realistic advantage that Mr. Harris might have gleaned from cross-examining her and so we conclude that the guilty verdict was "surely unattributable" to Mr. Harris's inability to do so.

## III.

Mr. Harris contends finally that the trial court erred by admitting certain utility records into evidence. At trial, Cynthia Broadway, Mr. Harris's mother, testified that because of a power outage at her home she stayed at Mr. Harris's home during the period that Mr. Harris was under surveillance. Her further testimony that she did not see anything indicating drug activity during her stay was intended to bolster Mr. Harris's defense that Detective Liston planted the drugs seized at his home. The utility company records indicated that there was indeed a power outage at Ms. Broadway's address, but that it occurred after Mr. Harris was arrested.

When the government offered the records, it stated that they were being introduced for purposes of impeachment. But impeachment of a witness involves evidence that calls into question the witness's veracity. It deals with "matters like the bias or interest of a witness, his or her capacity to observe an event in issue, or a prior statement of the witness inconsistent with his or her current testimony." *Berry v. Oswalt*, 143 F.3d 1127, 1132 (8th Cir. 1998). The evidence at issue here, on the other hand, is rebuttal evidence: "Impeachment is an attack on the credibility of a witness, whereas rebuttal testimony is offered to explain, repel, counteract, or disprove evidence of the adverse party." *Sterkel v. Freuhauf Corp.*, 975 F.2d 528, 532 (8th Cir. 1992). The utility records were not offered to show that Ms. Broadway was not a credible person but to show that she was not living at Mr. Harris's apartment when it was under surveillance. It was therefore admissible as relevant substantive evidence.

The cases that Mr. Harris and the government cite in their briefs on this issue are entirely inapposite. *See, e.g., United States v. Allen*, 540 F.3d 821, 823, 825-26 (8th Cir. 2008); *United States v. Roulette*, 75 F.3d 418, 423 (8th Cir. 1996), *cert.*

*denied*, 519 U.S. 853 (1996); *Arpan v. United States*, 260 F.2d 649, 658 (8th Cir. 1958). In all those cases, a party attempted to introduce extrinsic evidence of a prior statement made by a witness which was inconsistent with that witness's trial testimony in an effort to attack the witness's credibility. *See* Fed. R. Evid. 613(b). They simply have no application to the present case because the evidence at issue here was not a prior inconsistent statement and was not even relevant for impeachment purposes: It was admissible as evidence to rebut the testimony of Ms. Broadway.

IV.

We affirm the district court's judgment.

_____