# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2040

_____

Terrance Morris; Ricardo Morris;      *
Rosalind Morris,                           *
                                       *
     Plaintiffs - Appellants,        *   Appeal from the United States
                                     *   District Court for the
v.                             *   Western District of Missouri
                                     *
Jarrett Lanpher; Robert Schweitzer,  *
                                     *
     Defendants - Appellees.        *

_____

Submitted:  December 11, 2008
Filed:  April 24, 2009

_____

Before LOKEN, Chief Judge, BEAM, Circuit Judge, and KYLE,[*] District Judge.

_____

LOKEN, Chief Judge.

At 11 p.m. on July 28, 2003, Richard Schiele was shot in his Kansas City home by two assailants.  Schiele identified Ricardo Morris as one of the assailants to Police Officer Jarrett Lanpher.  Based on this identification, and some corroboration by other witnesses, Lanpher obtained a warrant to search the nearby home where brothers Terrance and Ricardo Morris lived with their mother, Rosalind.  The warrant search

_____

[*]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

yielded no evidence, and the brothers were absolved of any role in the shooting. Another officer kicked Terrance in the face while executing the warrant.

Rosalind and her sons filed this § 1983 complaint against the Kansas City Board of Police Commissioners and five police officers. The district court[1] granted summary judgment dismissing the Fourth Amendment claim against Lanpher and his supervisor, Sergeant Robert Schweitzer. Morris v. Lanpher, 2007 WL 869498, at *5 (W.D. Mo. Mar. 20, 2007). One year later, a jury found in favor of the other officer on the excessive force claims. The Morrises appeal only the dismissal of the Fourth Amendment claim. They contend that the affidavit Lanpher submitted in obtaining the search warrant contained deliberate falsehoods and recklessly disregarded the truth. Reviewing the grant of summary judgment *de novo*, we affirm.

## I.

After the shooting, Schiele did not identify his assailants before being taken to a hospital. Lanpher interviewed Schiele at the hospital the next evening. Schiele said he lived with a man named Jason, who was helping him remodel houses. Schiele described the assailants as "two black males." Lanpher's interview report then states:

> The victim was asked if he knew anyone who would have done this he immediately thought that Jason had something to do with the attack and that the two dudes he hangs with w[]ere the one[]s who did the actual attack. He stated he knew the two dudes went by "Dink" and "Mont." He stated he did not know them personally but knew Jason went to their house all the time around the corner. The victim was asked if he would be able to identify the subjects who attacked him and he stated, "Yes."

Ricardo and Terrance Morris have been known since birth as "Dink" and "Mont."

---

[1]The HONORABLE FERNANDO J. GAITAN, JR., Chief Judge of the United States District for the Western District of Missouri.

Some three hours later, Lanpher interviewed Schiele's roommate, Jason Lancaster, then in custody on other charges. Lancaster denied any part in the shooting and said he visited Schiele in the hospital earlier that day. Schiele told Lancaster "two black dudes shot him, one of them was stocky and the other a short dude." Schiele said "it might have been the two dudes who live in the 2nd house on the north side of 62nd Street," who Lancaster knew only as "Dink" and "Mont." Lancaster said he went to their house before visiting Schiele that day, as neighbors had reported, but no one was home. Lanpher's interview report states:

> Lancaster was then shown a photo Line-up consisting of six black males all similar in appearance, which included a photograph of Ricardo Morris . . . in the number six position. Morris resides at 1318 E. 62nd Street, which was identified by neighbors as the residence that Lancaster had visited on his ATV earlier in the day. Lancaster identified Morris as the subject he knew as "Dink."

The next morning, Lanpher visited Schiele at the hospital and showed him the same six-photo line-up. Lanpher's report states, "The victim viewed the line-up and identified Morris as one of the suspect[]s who shot him."

That afternoon, Lanpher prepared an affidavit applying for a warrant to search 1318 E. 62nd Street for "Clothing, handguns, rifles, ammunition, spent shell casings, trace evidence, flashlights." After reciting the victim's description of the shooting, and what neighbors reported hearing and seeing at the time, the affidavit recited:

> Neighbors identified 1318 E. 62nd Street as the house that the victim's friend hung out with. A computer check was conducted and a photo line-up was shown to the victim, which included a resident of 1318 E. 62nd Street. The victim identified this subject as the one he wrestled with and shot him. The subject who lives with the victim also identified the subject.

-3-

A Jackson County judge issued the warrant. Lanpher was present when a Tactical Entry Team executed the warrant. Nothing was seized.

## II.

Qualified immunity protects public officials from damage actions if their conduct did not violate clearly established rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A police officer in applying for a search warrant is entitled to qualified immunity from a § 1983 Fourth Amendment damage claim if his conduct was objectively reasonable. "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . will the shield of immunity be lost." Malley v. Briggs, 475 U.S. 335, 344-45 (1986). Officer Lanpher satisfies that standard in this case. His affidavit recited that he heard Schiele identify "Dink" and "Mont" as possible assailants, gathered evidence identifying Dink and Mont and linking them to Lancaster and to 1318 E. 62nd Street, and saw both Schiele and Lancaster identify Ricardo Morris as "Dink," one of the assailants, from a photo line-up. The affidavit clearly was not "lacking in indicia of probable cause." See Tangwall v. Stuckey, 135 F.3d 510, 519 (7th Cir. 1998).

The Morrises argue that Lanpher is not entitled to qualified immunity for a different reason -- because his warrant application "deliberately omitted material and exculpatory information and included falsehoods." The principle is sound. "A warrant based upon an affidavit containing 'deliberate falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment" and subjects the police officer to § 1983 liability. Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996), quoting Franks v. Delaware, 438 U.S. 154, 171 (1978). Truthful in this context means that the information put forth is "believed or appropriately accepted by the affiant as true." Franks, 438 U.S. at 165.

The district court rejected this contention based upon its review of the extensive summary judgment record. After summarizing the many omissions and falsehoods asserted by the Morrises, the court explained:

> The Court finds, however, that most of the alleged omissions and falsehoods . . . are either immaterial, not supported by the record, or merely conclusions or attorney argument. Whatever the victim's level of knowledge regarding the Morris family, the victim identified the suspects as "Dink" and "Mont" -- the undisputed nicknames of Plaintiffs Ricardo and Terrance Morris. The materials found in the victim's home do not automatically cast doubt as to the victim's identification of suspects. Plaintiffs' claims that Defendant Lanpher made false claims regarding what neighbors told him are merely conclusions that are unsupported by any facts in the record. . . . Furthermore, the omissions of the victim's roommate's activities and statements are largely immaterial in that the roommate was also a suspect in the shooting, and the roommate's statements do not prevent suspicion of the Morris brothers, given the victim's identification of them. 2007 WL 869498, at *5.

After careful review of the record, we agree with the district court's analysis. The Morrises bore "the burden of proving the intentional or reckless inclusion of false statements in a warrant affidavit." United States v. Ozar, 50 F.3d 1440, 1443 (8th Cir. 1995). When Lanpher made a properly supported motion for summary judgment on the ground of qualified immunity, they "may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El v. Britton, 523 U.S. 574, 600 (1998). The Morrises presented no evidence Lanpher had a personal stake in the matter that might cause him to act other than as an impartial criminal investigator. Compare Moody v. St. Charles County, 23 F.3d 1410 (8th Cir. 1994). They offered no specific, nonconclusory evidence that Lanpher believed his affidavit was false, or recklessly misconstrued Schiele's identification. Significantly, they presented no affidavit or deposition

testimony by victim Schiele or by roommate Lancaster contradicting their photo line-up identifications. Compare Hunter v. Namanny, 219 F.3d 825 (8th Cir. 2000). Indeed, that the recitals in the warrant affidavit aligned closely with Lanpher's contemporaneous interview reports is strong evidence that Lanpher believed that Schiele had identified one of his attackers, or at least accepted the identification as true for purposes of further investigation. While we construe disputed facts in the non-moving parties' favor, we may not infer bad motive absent even a scintilla of material fact supporting that inference.

For these reasons, we conclude that the Morrises failed to submit probative evidence that Lanpher's warrant affidavit contained deliberate falsehoods or a reckless disregard of the truth, and that an affidavit "supplemented by the omitted information, would not have been sufficient to support a finding of probable cause." Riehm v. Engelking, 538 F.3d 952, 966 (8th Cir. 2008); see Bagby, 98 F.3d at 1099 ("qualified immunity is appropriate if defendant has been accused of submitting a recklessly false affidavit and if a corrected affidavit would still provide probable cause to arrest or search"). Accordingly, summary judgment was proper.

Without an underlying constitutional violation by Lanpher, the Morrises' § 1983 claim against Schweitzer for failure to supervise necessarily fails. See Brockinton v. City of Sherwood, 503 F.3d 667, 673 (8th Cir. 2007).

The judgment of the district court is affirmed.
_____