# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-1884

———————

United States of America,             *

                               *

     Appellee,                   *

                               *   Appeal from the United States

    v.                       *   District Court for the

                               *   Eastern District of Missouri.

Reginald Jean-Guerrier,      *

                               *

     Appellant.             *

———————

Submitted: January 10, 2012
Filed: February 2, 2012

———————

Before MURPHY, BYE, and COLLOTON, Circuit Judges.

———————

MURPHY, Circuit Judge.

Reginald Jean-Guerrier was convicted by a jury of possessing over 100 kilograms of marijuana with intent to distribute. While testifying at trial, Jean-Guerrier spoke with a pronounced Haitian accent. Afterward the district court[1] permitted rebuttal testimony from a court security officer who had heard Jean-Guerrier speaking on the phone during trial recesses in unaccented English. Testimony was also allowed about prior instances in which the defendant, his codefendant, and their acquaintances had transported marijuana. Jean-Guerrier

———————

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

appeals, contending that the district court erred in admitting this evidence and that he should be granted a new trial. We affirm.

## I.

In August 2010 Jean-Guerrier, a native of Haiti, was traveling with Leon Fraser in a semi truck pulling a stolen trailer en route from Tucson, Arizona to New York City. Law enforcement officers stopped the truck in Phelps County, Missouri after observing it leave the interstate near a sign warning of a drug checkpoint ahead. The truck had driven through a stop sign at the end of the exit ramp and reentered the interstate headed in the opposite direction before it was stopped. Fraser was driving at that time, and Jean-Guerrier was in the sleeper berth. The officers who stopped the truck questioned Fraser about his route and load, inspected the truck's log book, found several discrepancies between Fraser's claimed route and the log book entries, and discovered that Fraser did not have a bill of lading. They brought in a drug dog which alerted on the truck's trailer. Inside the trailer officers discovered approximately 1000 pounds of marijuana. They then arrested both travelers.

A grand jury returned a two count indictment charging both Jean-Guerrier and Fraser with knowingly possessing with intent to distribute in excess of 100 kilograms of marijuana and with conspiracy to do the same. 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846. Fraser pled guilty to both counts and agreed to assist the government with Jean-Guerrier's prosecution. Jean-Guerrier requested a jury trial, and the prosecution went forward on the possession count.

Before trial the government filed a notice of intent to introduce other act evidence pursuant to Federal Rule of Evidence 404(b). It planned to ask Fraser to testify about previous trips during which he had transported marijuana along the same route. Some of these previous trips had been taken with Jean-Guerrier and others with some of their mutual acquaintances. The defense filed a motion in limine to

exclude Fraser's testimony concerning any trips made with Jean-Guerrier other than the one for which they had been arrested. The district court denied the motion, concluding that the challenged evidence was admissible to show knowledge and plan. Jean-Guerrier did not object to introduction of evidence regarding trips Fraser had made without him, including those involving mutual acquaintances.

The government's case hinged on proving that Jean-Guerrier had knowledge that the truck in which he was traveling contained marijuana. It presented testimony from Fraser as well as the law enforcement officers who had stopped the truck and interviewed the two men following their arrests. The prosecution sought to highlight inconsistencies between what Jean-Guerrier had told law enforcement regarding the nature of his trip and the physical evidence including the truck's log books. Agent Chapman testified that he did not recall Jean-Guerrier having had an accent. Chapman also testified that when asked about why he was in the semi truck, Jean-Guerrier responded that he and Fraser had used the truck to transport a load of noodles from New York to Los Angeles and had then begun a return trip, stopping in Missouri to pick up a load of pallets. Chapman explained that Jean-Guerrier's claim to have been transporting noodles and pallets was not supported by the truck's log book or a bill of lading and did not correspond to trucking industry practice.

Fraser testified concerning his previous trips transporting marijuana and about mutual acquaintances of his and Jean-Guerrier's who had participated in these trips. Fraser also explained that he and Jean-Guerrier had taken a previous cross country trip transporting marijuana along the same route. Prior to this testimony, the defense renewed its objection to evidence concerning any previous trip in which Jean-Guerrier had been involved.

The defense case consisted solely of Jean-Guerrier's testimony. On the stand he admitted taking a previous cross country trip with Fraser and knowing the persons Fraser had testified were involved in previous trips. Jean-Guerrier nevertheless

denied knowing that Fraser had been transporting marijuana on the previous trip or knowing about the marijuana on the last trip. Jean-Guerrier spoke with a heavy accent during his testimony and was asked to repeat certain words due to counsel's difficulty in understanding him. During cross examination, the government asked Jean-Guerrier about his accent and whether he had told Agent Chapman that he and Fraser had been transporting a load of noodles cross country. Jean-Guerrier denied making such a statement and indicated that Chapman may have misunderstood him due to his accent.

On the final day of trial the district court informed the parties at sidebar that a court security officer, Leondus Bates, had notified the court that he had heard Jean-Guerrier speaking without an accent on a cell phone during a trial recess. The prosecutor said she would like to call Bates as a witness. Defense counsel simply replied, "I'd object." The district court suggested that the prosecutor could take "some time to talk to [Bates] and find out more . . . before you decide to call him as a witness." Defense counsel also asked to speak with the witness. After a short recess, the prosecution informed the district court that it would call Bates as a rebuttal witness. Defense counsel made no objection. Bates then took the stand and testified that he had been surprised hearing Jean-Guerrier speak with a foreign accent while testifying because he had twice heard him speaking with no accent during trial recesses.

The jury found Jean-Guerrier guilty. At sentencing the district court determined the applicable guideline range to be 97–121 months and imposed a 97 month sentence. Jean-Guerrier appeals, arguing that he is entitled to a new trial because the district court abused its discretion by allowing the prosecution to call Bates as a rebuttal witness and to present other act evidence through Fraser's testimony.

II.

A district court's evidentiary rulings are ordinarily reviewed for an abuse of discretion. United States v. Montgomery, 635 F.3d 1074, 1089 (8th Cir. 2011). Our review is however for plain error if a defendant fails to preserve an error by not objecting before or during trial. United States v. White Bull, 646 F.3d 1082, 1091 (8th Cir. 2011). To prove plain error the defendant must show that "(1) the district court committed an error, (2) the error is clear or obvious, and (3) the error affected his substantial rights." Id. An error is "clear or obvious" if it is not "subject to reasonable dispute." Puckett v. United States, 556 U.S. 129, 135 (2009). Even if the defendant meets these three requirements of plain error, an appellate court will only reverse if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotations and citation omitted).

We first address appellant's contention that the district court erred by permitting the court security officer's testimony that he heard Jean-Guerrier speak in unaccented English during trial recesses. Our review is for plain error because defense counsel did not properly object to this testimony. To preserve error a party must state "the specific ground of objection" if it was not "apparent from the context." Fed. R. Evid. 103(a)(1).[2] Defense counsel gave no reason for objecting to the prospect of Bates's testimony when the possibility was raised, and no basis was clear from the context. The prosecutor therefore faced nothing requiring a response. Moreover, defense counsel made no objection when Bates was later called to the stand. While a party need not renew an objection once the court "makes a definitive ruling on the record" regarding it, Fed. R. Evid. 103(a); see United States v. Huerta-

_____

[2]A new version of the Federal Rules of Evidence went into effect on December 1, 2011 as part of the Federal Rules Style Project. Changes made as part of this project are "intended to be stylistic only." See Fed. R. Evid. 101 advisory committee's note. All quotations here are from the rules in effect during Jean-Guerrier's December 2010 trial.

Orosco, 340 F.3d 601, 604 (8th Cir. 2003), here no ruling had been required on defense counsel's undefined and unrepeated objection. Both counsel decided to speak with Bates before he was called to the stand but no further objection was made. The district court may well have thought that after having had the opportunity to speak with the witness, defense counsel decided not to object to his testimony. We are thus limited to plain error review.

Jean-Guerrier contends that Bates's testimony was improper impeachment evidence barred by Rule 608(b). That rule prohibits introducing extrinsic evidence of specific instances of a witness's conduct for the purpose of attacking his character for truthfulness. Jean-Guerrier also claims that Bates's testimony was extrinsic evidence of a prior inconsistent statement and thus governed by Rule 613(b). He finally argues that the potential for unfair prejudice outweighed the probative value of the testimony. See Fed. R. Evid. 403. The government counters that Bates's testimony was properly admitted as rebuttal evidence.

We conclude that the district court did not commit plain error by allowing this evidence in rebuttal. Rebuttal evidence "is offered to explain, repel, counteract, or disprove evidence of the adverse party." United States v. Harris, 557 F.3d 938, 942 (8th Cir. 2009) (citation omitted). It is distinct from impeachment evidence which is "an attack on the credibility of a witness." Id. (citation omitted). Like all evidence, rebuttal evidence must be relevant to be admissible. See id.

On cross examination the prosecutor asked Jean-Guerrier "has your accent changed from [the night of Agent Chapman's interview] to today?" Jean-Guerrier responded "[h]ow am I going to change my accent?" When asked if his accent changed when he became excited, he answered "[o]nly you can tell me. I don't know." The prosecutor then asked Jean-Guerrier whether he had told Agent Chapman that he had been transporting a load of noodles, to which he responded "I did not . . . he probably misunderstood, you know, my accent." Jean-Guerrier argues

that there was nothing to rebut because the prosecution never directly asked him if he was capable of speaking without any accent. Read as a whole, however, Jean-Guerrier's cross examination testimony, especially his suggestion that he was incapable of changing his accent, could be taken as implying that he always spoke with a heavy accent. The district court could have reasonably determined that Bates's testimony was offered to disprove or counteract this implication by providing evidence that Jean-Guerrier was capable of speaking without the heavy accent heard at trial. See id.

Whether Jean-Guerrier was capable of speaking without an accent was relevant on the issue of whether he had knowledge that the truck contained marijuana. A key part of the government's case consisted of showing the inconsistencies between statements Jean-Guerrier had made to Agent Chapman concerning the nature of his trip and what the physical evidence and log books showed. These inconsistencies suggested that Jean-Guerrier was attempting to hide something, leading to an inference that he had knowledge of guilt. By saying that Agent Chapman may have misunderstood him due to his accent, Jean-Guerrier attempted to cast doubt on the agent's testimony. Bates's rebuttal testimony undermined any suggestion that the marked accent Jean-Guerrier spoke with at trial necessarily reflected his inability to be clearly understood during his earlier conversations with law enforcement.

Jean-Guerrier's characterization of Bates's testimony as extrinsic character evidence is inaccurate. Rule 608(b)'s prohibition on the introduction of extrinsic evidence does not apply here because Bates's testimony was not offered to impugn Jean-Guerrier's veracity, but rather to witness how he had sounded while talking during trial breaks. Bates did not describe a situation in which Jean-Guerrier told a lie or engaged in conduct such as fraud that inherently involves untruthfulness. Cf. United States v. Riddle, 193 F.3d 995, 998 (8th Cir. 1999) ("Rule 608(b) forbids the use of extrinsic evidence to prove that . . . specific bad acts occurred.") (emphasis added). This testimony rather concerned Bates's own sense impression of Jean-

Guerrier's manner of speaking. Rule 613(b), which governs extrinsic evidence of prior inconsistent statements, is also inapplicable because Bates testified about Jean-Guerrier's manner of speaking, not the contents of his speech.

As for Jean-Guerrier's argument that the evidence should have been excluded under Rule 403 because its probative value was outweighed by a danger of unfair prejudice, we have recognized that a trial court's determination of such a question is owed particularly great deference because it requires "on-the-spot balancing." Bennett v. Nucor Corp., 656 F.3d 802, 811 (8th Cir. 2011) (citation omitted). Bates's testimony was probative on a relevant issue. Jean-Guerrier asserts that the testimony was extremely prejudicial because the jury could have developed a rapport with the security officer through possible interaction during the course of the trial. This theory is unsupported by evidence and also undermined by the fact that the district court took steps to ensure that the jury had no further contact with Bates following his rebuttal testimony.

We next address Jean-Guerrier's argument that the district court improperly admitted Fraser's testimony concerning previous trips he had taken involving transportation of marijuana. On appeal Jean-Guerrier does not challenge the admission of evidence concerning the prior trip he and Fraser had taken together, but only evidence concerning trips Fraser had taken alone or with their mutual acquaintances. Our review is again for plain error because at trial Jean-Guerrier only objected to Fraser's testimony concerning prior trips that he and Jean-Guerrier had made together. See White Bull, 646 F.3d at 1091.

Jean-Guerrier contends that Fraser's testimony was improperly admitted under Rule 404(b). That rule prohibits "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith" unless the evidence is offered for one of several permissible purposes, such as to show proof of knowledge or plan. While the government included the challenged

evidence in its Rule 404(b) notice prior to trial, this evidence does not fall within the ambit of Rule 404(b) because it was not evidence of Jean-Guerrier's past acts. <u>See</u> <u>United States v. Halk</u>, 634 F.3d 482, 486 (8th Cir. 2011) ("Rule 404(b) . . . prohibits the use of evidence <u>of a defendant's</u> other crimes, wrongs, or bad acts . . . .") (emphasis added).

Jean-Guerrier also has not demonstrated that the danger of unfair prejudice outweighed the probative value of this evidence. <u>See</u> Fed. R. Evid. 403. Evidence that Fraser had previously participated in cross country trips and that mutual acquaintances had been involved with those trips was relevant because it made it more likely that Jean-Guerrier had knowledge that marijuana was present on the trip for which he had been arrested. <u>See</u> Fed. R. Evid. 401. This evidence was less prejudicial than the properly admitted Rule 404(b) evidence regarding the past trip Jean-Guerrier had made with Fraser. The district court thus did not err, let alone plainly err, by allowing this testimony.

Accordingly, we affirm the judgment of the district court.

_____