# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1860

_____

Henry H. Howe

*Plaintiff  Appellant*

v.

Steven Gilpin, in his individual capacity, et al.

*Defendants  Appellees*

_____

Appeal from United States District Court
for the District of North Dakota - Eastern

_____

Submitted: December 13, 2022
Filed: April 20, 2023

_____

Before LOKEN, MELLOY, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

In late 2013, Barbara Whelan, State's Attorney for Walsh County, North Dakota, and agents of the Grand Forks Narcotics Task Force ("GFNTF"), were preparing to try pending drug charges against Paul Lysengen. Delicia Glaze and Scott Kraft were the lead GFNTF agents, supervised by Steven Gilpin. The charges were based primarily on a May 2013 controlled buy by a confidential informant, EB.

Lysengen was represented by attorney Henry Howe. His stepson, Anthony Haase, pleaded guilty in a related case and was incarcerated.

In January 2014, Steven Anderson, facing felony theft charges in Grand Forks County, told Gilpin that EB was in danger. Anderson agreed to act as a GFNTF informant. He attended meetings with Lysengen, Howe, and Wesley Smith and secretly recorded comments that provided probable cause to believe a conspiracy to murder EB was afoot. On January 30, Glaze prepared and submitted a Felony Complaint charging Howe with Criminal Conspiracy to Commit Murder, together with a supporting affidavit. A Walsh County District Judge issued a warrant for Howe's arrest for that offense, commencing the criminal prosecution. See N.D.R. Crim. P. 3(a), 4(a)(1). Howe was arrested that day at the start of a preliminary hearing in one of Lysengen's criminal cases.

Some months later, prosecutor Whelan dismissed the amended charge against Howe, prior to the preliminary hearing, after learning that Anderson previously made false murder-for-hire allegations to Nebraska and Minnesota law enforcement authorities. Howe then filed this § 1983 lawsuit against Gilpin, Glaze, Kraft, and Whelan. After reciting Anderson's lengthy prior criminal history, Howe alleged two Fourth Amendment violations: (I) the warrant was based upon deliberate falsehood or reckless disregard for the truth -- the use of Anderson to develop and generate false evidence incorporated in Glaze's affidavit; and (ii) defendants deprived Howe of a preliminary hearing at which Howe would have been discharged because the warrant was not supported by probable cause.[1] Howe appeals the grant of summary judgment

---

[1]Howe did not pursue this claim in resisting defendants' motion for summary judgment, and for good reason -- it is not a Fourth Amendment claim. Rule 4(a)(1) provides that if it appears from the criminal complaint and supporting affidavit that there is probable cause the offense has been committed, "the magistrate must issue an arrest warrant." Howe concedes Glaze's affidavit *on its face* made an adequate showing of probable cause, so his arrest was not an unconstitutional seizure. A

dismissing these claims. Howe v. Gilpin, No. 3:20-CV-00013, 2022 WL 1295832 (D.N.D. Mar. 28, 2022). Reviewing *de novo*, we agree with the district court[2] that the affidavit provided probable cause to arrest Howe, even if corrected to include the information Howe alleges was recklessly omitted. Accordingly, we affirm.

## I. Background

Glaze's January 30 affidavit recited that there were two pending criminal charges against Lysengen arising out of EB's May 2013 controlled buy of methamphetamine. The first was scheduled for trial in April, the second for a preliminary hearing later that day. The GFNTF investigation revealed that, in November contacts with Haase in prison, Lysengen said he knew EB's identity. Lysengen and Haase discussed finding a way to "set up" the informant. Lysengen wrote in December, "There will be someone to visit our friend in [rural Walsh County, EB's location] just to show how grateful we are of what was done."

At this time, Lysengen was staying with Anderson, whom he met in a county jail in 2013. On January 14, 2014, Anderson reported to GFNTF that on January 9 Lysengen and Smith had discussed a plan to murder EB. Smith produced a map of

---

defendant may factually attack the warrant affidavit at his subsequent preliminary hearing, where the court makes a finding that there is probable cause to hold the defendant over for trial, or he is discharged. See Sivertson v. McLees, 407 N.W.2d 799, 800 (N.D. 1987); N.D. R. Crim. P. 5.1. But that determination is based in part on evidence gathered after the defendant's arrest. Here, a map, photo of EB, and loaded handgun -- evidence of the alleged conspiracy described by Anderson during his January 14 interview -- were found in co-defendant Smith's home when he was arrested the same day as Howe.

[2]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota. The court also dismissed Howe's § 1983 and state law malicious prosecution claims. Howe does not appeal those rulings.

EB's residence and said EB was an antiques collector. The plan was that Anderson would call EB, discuss antiques, and arrange a meeting at which Smith would kill her and Rodney Avron, a drug dealing associate of Lysengen, would dispose of the body.

Glaze's affidavit recited that GFNTF surveillance confirmed Anderson and Lysengen were often together. Anderson reported attending a January 22 meeting with Howe and Lysengen about making EB "go away." Howe said, "it would be good if the b**** died or went away." Lysengen asked what would happen if EB did not show up for Court. Howe responded, "They wouldn't have a case." Lysengen said, "if she shouldn't show up, then she won't show up."

Two days later, Anderson wore a body transmitter to another meeting with Lysengen and Howe. Howe explained that EB's presence is necessary for the State to proceed with the prosecution. If she's not around, he said, it is like a "house of cards" that falls down. Howe said that EB "being gone" needs to happen more than five days before trial or it looks suspicious. Howe said the Government won't have EB come to the preliminary hearing; if she did come, Howe would probably cancel the hearing so that prosecutors could not use her preliminary hearing testimony if she was not present at trial. Anderson reported that, as the plan developed over the weekend of January 24-26, Anderson was to call EB at a number Smith and Lysengen provided, arrange to meet EB at a storage unit in Grand Forks, drug EB, and place her in her car to look like asphyxiation. GFNTF asked EB to leave the area for her safety.

The affidavit was corroborated by Anderson's wire-recorded conversations and by Lysengen's prior communications with Haase. In addition, GFNTF verified that Smith, Lysengen, and Avron knew each other; Lysengen was living at Anderson's house; EB collected antiques; and Smith had visited EB's home. Anderson knew EB's first name and provided a copy of the map and photo Smith produced.

After GFNTF enlisted Anderson as a confidential informant, he filled out a personal history report revealing convictions for aggravated forgery, bigamy, check forgery, theft by false representation, and theft by swindle. GFNTF likely ran a North Dakota criminal records, but there is no evidence of a more thorough national criminal records check known as a "Triple I" report. Anderson had felony charges pending in Grand Forks and Cass Counties. Glaze was aware of the pending Grand Forks charges. Her affidavit did not disclose this criminal history.

With the criminal charge pending, Howe's attorney hired an investigator to conduct a background investigation of Anderson. In March 2014, in response to Howe's discovery requests, Whelan obtained a Triple I report on Anderson, which revealed numerous additional charges for forgery, theft by deception, false promises, and false representation. In late March, Whelan received documents disclosing that Anderson made false allegations of "murder for hire" plots in Minnesota in 2003 and in Nebraska in 2004. Neither incident resulted in criminal charges so they were not in the Triple I report. On April 24, Whelan moved to amend the charge against Howe to criminal conspiracy to tamper with a witness. On May 8, the day before the preliminary hearing, Whelan moved to dismiss the amended charge against Howe. In an email to Howe's attorneys, Whelan explained that, in light of the information made available about Anderson, "Although I remain confident that there is probable cause that Mr. Howe was involved, I see no need to go through tomorrow's preliminary hearing [because] I do not believe there is proof beyond a reasonable doubt, and therefore I could not, in good conscience, proceed to trial." The Walsh County District Court dismissed the criminal case that day. This lawsuit followed.

## II. Discussion

"A warrant based upon an affidavit containing 'deliberate falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment. An official who causes such a deprivation is subject to § 1983 liability." Bagby v. Brondhaver, 98

F.3d 1096, 1098 (8th Cir. 1996), quoting Franks v. Delaware, 438 U.S. 154, 171 (1978); see Burk v. Beene, 948 F.2d 489, 494 (8th Cir. 1991). In rejecting Howe's Fourth Amendment claims, the district court concluded that "Howe has alleged no facts, nor does the record support any facts, that amount to a deliberate falsehood by Glaze being the basis for the warrant affidavit." Howe v. Gilpin, 2022 WL 1295832 at *4. We agree.

On appeal, Howe argues, as he did to the district court, that defendants, working together as investigators, acted with reckless disregard of the truth by declining to inform the judicial officer who issued the arrest warrant "of highly material information concerning the credibility and criminal history of sole witness" Anderson. This deliberate falsehood issue turns on the mental state of the affiant, Glaze, not the informant, Anderson. See Franks, 438 U.S. 154 at 171. Howe argues Glaze failed to disclose that Anderson has a criminal history establishing that he is a chronic liar, which raises a genuine issue of fact regarding Glaze's reckless disregard for the truth. Reckless disregard may be inferred from the omission of information. However, the party attacking a warrant affidavit "must show that the omitted material would be clearly critical to the finding of probable cause." United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993) (quotation omitted). "In a warrant affidavit, the government need only show facts sufficient to support a finding of probable cause." United States v. Ozar, 50 F.3d 1440, 1445 (8th Cir. 1995) (quotation omitted); see United States v. Knutson, 967 F.3d 754, 760 (8th Cir. 2020); Murray v. Lene, 595 F.3d 868, 872 (8th Cir. 2010).

"Probable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed an offense." Williams v. City of Alexander, 772 F.3d 1307, 1310 (8th Cir. 2014) (cleaned up). "The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993). In a § 1983 case, the issues are

whether "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable," and, if deliberate falsehood is alleged, whether the affidavit is truthful, which "means that the information put forth is believed or appropriately accepted by the affiant as true." Morris v. Lanpher, 563 F.3d 399, 402 (8th Cir. 2009) (cleaned up). Omissions and falsehoods that are immaterial or not supported by the record do not suffice. Id. at 403.

Glaze's affidavit contained powerful indicia of probable cause. Most important was the detailed recitation of statements made by Howe, Lysengen, and Anderson at the recorded January 24, 2014 meeting. Standing alone, this objective evidence provided probable cause to believe a conspiracy to murder EB existed. It was supported by numerous other recitals in the affidavit: Lysengen's pending prosecutions arising from EB's controlled buy, giving him a motive to eliminate a government witness Howe said was essential; GFNTF investigators learning of Lysengen's contacts with his incarcerated step-son evidencing their desire to "set up" EB; and GFNTF surveillance activities confirming numerous details of the plot Anderson reported in face-to-face meetings with officers. Opportunities to assess Anderson's credibility first-hand gave greater weight to the informant's information. See United States v. Robertson, 39 F.3d 891, 893-94 (8th Cir. 1994).

Howe argues that Anderson's known fraud-related criminal convictions were relevant information because they cast doubt on his credibility. Cf. Fed. R. Evid. 609(a)(2). "Many informants have prior convictions." United States v. Leppert, 408 F.3d 1039, 1042 (8th Cir. 2005). The question is not whether the omitted information might be of interest to the issuing magistrate. Omitted information must be "clearly critical" to the finding of probable cause. Here, a corrected affidavit disclosing Anderson's prior fraud-related crimes of which Glaze was aware still would have provided the issuing judicial officer probable cause to issue the arrest warrant. That Anderson was being prosecuted for theft in Grand Forks County was not plainly exculpatory evidence. If anything, it was consistent with an inference that Lysengen

and Howe had involved Anderson in a criminal conspiracy. Thus, there was no Fourth Amendment violation. See Bagby, 98 F.3d at 1099.

Howe argues Defendants knew Anderson had serious credibility issues. Therefore, they had a duty to further investigate Anderson's criminal history and to disclose his prior false "murder-for-hire" plots in two other States. We disagree. Once GFNTF agents established probable cause to arrest Howe, as recited in the Glaze affidavit, they had no constitutional duty to further investigate Anderson's credibility. "[O]fficers are not required to conduct a mini-trial before arrest." Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 817 (8th Cir. 2010) (quotation omitted). As in Gibson v. Cook, the agents did not "disregard[] plainly exculpatory evidence." 764 F.3d 810, 814 (8th Cir. 2014) (quotations omitted).

There is no evidence Whelan or any GFNTF investigator knew about the false "murder-for-hire" allegations when Glaze submitted the warrant affidavit. An agent does not "violate a clearly established constitutional right by omitting information from a warrant application that he does not actually know, even if the reason is his own reckless investigation." Hartman v. Bowles, 39 F.4th 544, 545 (8th Cir. 2022). As Howe's subsequent, lengthy investigation of Anderson makes clear, minimal further investigation into Anderson's criminal history would not have exonerated Howe. See Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999). And given the imminent threat to EB's safety, time was of the essence.

The judgment of the district court is affirmed.

_____