# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1485

_____

United States of America

*Plaintiff - Appellant*

v.

Michael L. Evans

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 18, 2016
Filed: March 23, 2017

_____

Before RILEY,[1] Chief Judge, WOLLMAN and KELLY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Officers discovered a firearm in Michael L. Evans's possession during a search of his person incident to arrest for an unrelated crime. Evans thereafter was charged

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The government appeals from the district court's[2] order granting Evans's motion to suppress evidence based on a lack of probable cause to arrest him. We affirm.

I.

On the afternoon of December 28, 2014, a woman contacted the Kansas City, Missouri, police department and reported that she had been raped the previous night and early that morning. She informed the police that she was waiting in a vehicle near the apartment building where the rape occurred, that she had hidden the condom that her attacker used in a trash can inside the apartment building, and that she intended to go into the building and retrieve it. The police dispatcher instructed the victim to remain in her vehicle until officers arrived.

In a subsequent call, the victim reported that her attacker had just exited a bus and was now sitting at a bus stop near her location. She stated that she recognized the man as her attacker because he had approximately the same height, build, and skin tone, and he was wearing the same red Adidas shoes. At various points during this call, however, she expressed some uncertainty regarding the identification:

> I'm pretty sure that's him. I mean how many other dudes around here walk on the same God damn shoes. . . . I'm pretty sure, I mean how many people in the same area gonna have the same shoes on? . . . I'm pretty sure that's him. . . . [W]hat if it's not him but I'm pretty sure it is though.

---

[2]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

She also stated:

> If they could just pull up over there and talk to him first I mean I didn't
> really see his face but I can tell you he has a scar on his belly button and
> has tattoos on his hands and his neck but I don't know what they were
> I could barely see the bottom of 'em. But he has a scar above his belly
> button.

When Kansas City police officers Kellen Story and Jacqulynn Hobbs arrived, they made contact with the man who was waiting for the bus and placed him in handcuffs. They frisked him but did not discover anything significant. The man identified himself as Michael Evans and denied any involvement when informed that he was being investigated for a rape.

Officer Hobbs then went across the street to speak with the victim, who reported that she had met the attacker online on December 27, 2014, and that she thereafter had met him in person to "hang out." The victim became upset, however, when Hobbs asked for further detail regarding how the two had met. According to the victim, the attacker identified himself to her as Octavio or Octovi, and he was waiting for her inside the front door of the apartment building when she arrived. He said that the two could not go to his apartment because he was married, so they went to a stairwell where he frequently went to smoke. The attacker told her to partially undress so he would know she was not a police officer. After the victim complied with that request, the attacker raped her. The victim said that she could not see the attacker's face because he forced her to turn away from him, but she observed a scar above his navel approximately an inch or two long. She also stated that although the attacker had tattoos on his neck and possibly on his hands, she was unable to see them clearly because the lighting was poor and the attacker's hands were covered by clothing. The victim reported that she had retained the used condom and hidden it in a trash can before leaving the building. Although the attacker had taken her phone and deleted earlier text messages and evidence of calls between the two, he later sent

her a text message saying, "You're so sexy," to which she responded, "Thank you," and another text message asking, "You okay?" to which she responded, "I'm okay." She showed these text messages to Officer Hobbs. The victim also indicated that she had intended to approach Evans and examine his abdomen for the scar.

Sergeant James Swoboda arrived on the scene while Hobbs was interviewing the victim. Swoboda spoke with Evans, who denied any involvement in a rape and stated that he was merely waiting for a bus. Swoboda then spoke with the victim and Hobbs. The victim told Sergeant Swoboda that the attacker had a scar above his navel, which was similar to a surgery scar but without signs of stitches. The victim speculated that the attacker may have at one time been stabbed.

Swoboda then asked Evans if he had a scar on his abdomen. Evans replied that he did not. He denied that he had ever been stabbed, but allowed Swoboda to examine his abdomen. According to Swoboda, he observed a vertical scar on Evans's abdomen, without stitch marks, approximately six inches in length and extending from slightly above his navel to his groin area. Evans told Swoboda that the marking was a healed spider bite, but Swoboda did not believe him. Officer Story also examined Evans's abdomen and testified that the scar looked like an incision. It is undisputed that Evans has no tattoos on his hands or neck.

Sergeant Swoboda instructed Officers Story and Hobbs to place Evans under arrest for rape. Evans asked several times that the victim examine him and see that he was not her attacker. At no point did the officers bring the victim closer to Evans for such an inspection. During a search incident to arrest, the officers discovered a Lorcin .380 handgun in Evans's left jacket pocket.

Officers also found two keys in Evans's pocket. Swoboda did not check to see whether the keys would unlock the front door to the apartment building, believing that that information would be irrelevant. He did not ask the manager of the

apartment building if she recognized Evans, because the attacker could have gained entry to the building without living there. Swoboda did not ask the manager if a man named Octavio or Octovi lived in the building, because the suspect might not have used his real name and, as mentioned, might not have lived in the building. Swoboda did not instruct the officers to examine Evans for tattoos, because the victim had not seen the tattoos clearly. Swoboda also believed that what the victim perceived as tattoos could have been stamps required to enter clubs in the nearby entertainment district, temporary tattoos, or reminder notes that Evans had written on his hands. The officers did not call the phone number the victim believed was her attacker's to see if Evans's phone would ring.

Swoboda testified regarding his probable cause determination as follows:

There [were] a number of facts when all put together led me to that decision. The first was that the victim of the rape had pointed him out and identified him as the suspect. The second fact that she was able to describe a scar that he had on his stomach from across the street which nobody could see. The third factor was when we asked about the scar, he lied to us and said he did not have a scar. The fourth fact was that he was still in the vicinity of the crime, relatively a few hours after when it was supposed to have occurred. And she was—and the physical description she had originally given us matched the suspect, including one of the items he was wearing which really stood out, according to the victim, was his red Adidas shoes. . . . And then the last and final item was the used condom that she said she had put in the waste can to preserve as evidence that we found at the scene.[3]

Swoboda had also heard about a similar rape that had occurred two days earlier at the same location, causing him to be concerned about a possible serial rapist.

---

[3]Swoboda retrieved the used condom from the apartment building at some point during the investigation.

-5-

The district court concluded that the officers lacked probable cause to arrest Evans, notwithstanding the fact that Evans had the same height, build, and skin tone and was wearing the same type of shoes as the attacker. The court found that the mark below Evans's navel, which Sergeant Swoboda described as a scar, was a slight skin discoloration and that the small mark above his navel might be several hair follicles instead of a scar. The court reasoned that if the victim had been unable to observe the attacker's neck tattoo because of poor lighting conditions, it was unlikely that she could have observed this skin discoloration. The court thus found that Evans did not possess the identifying characteristics the victim had described, namely, the one-to-two-inch scar above his navel and tattoos on his hands and neck. The court concluded that Evans's presence near the scene twelve hours after the rape was an insufficient indication that he was the attacker, especially in light of the fact that Evans had exited a bus in the area and was waiting for a transfer. The court concluded that the officers' failure to have the victim examine Evans's abdomen, even though both the victim and Evans discussed this course of action, or to check whether Evans had a cell phone matching the number that had sent text messages to the victim after the attack, also militated against a finding of probable cause.

The district court also found that the officers' concerns about the victim's credibility indicated a lack of probable cause. The court noted that the victim refused to tell officers how she had met the attacker and became upset when asked about those circumstances, that the victim stated that she could not see the attacker's face despite meeting him in the building's lobby and riding the elevator with him, and that the victim hid the condom instead of fleeing the building immediately.

II.

"When reviewing a district court's suppression determination, we review the court's factual findings for clear error and its legal conclusions de novo." United States v. Quintero, 648 F.3d 660, 665 (8th Cir. 2011). We affirm unless the district

court's conclusion "is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." United States v. Aguilar, 743 F.3d 1144, 1146-47 (8th Cir. 2014) (quoting United States v. Vanover, 630 F.3d 1108, 1114 (8th Cir. 2011)). "A warrantless arrest by law enforcement is reasonable where there is probable cause to believe that someone has committed or is committing a crime." United States v. Winarske, 715 F.3d 1063, 1066 (8th Cir. 2013). "Probable cause exists when the totality of circumstances demonstrates that a prudent person would believe that the arrestee has committed or was committing a crime." Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999). Probable cause is determined according to the totality of the circumstances, and thus an officer may not "disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." Id. "[O]fficers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as 'law enforcement would not [be] unduly hampered . . . if the agents . . . wait[] to obtain more facts before seeking to arrest.'" Id. (alterations in original) (quoting United States v. Woolbright, 831 F.2d 1390, 1394 (8th Cir. 1987)). "An officer need not conduct a 'mini-trial' before making an arrest, but probable cause does not exist when a 'minimal further investigation' would have exonerated the suspect." Id. (citations omitted) (quoting Bigford v. Taylor, 834 F.2d 1213, 1219 (5th Cir. 1988)).

We first reject the government's contention that the district court took an improper "divide and conquer" approach to its probable cause analysis instead of considering the totality of the circumstances. The court stated that it had considered the totality of the circumstances, and its thorough analysis of the inculpatory and exculpatory evidence confirms the truth of that assertion.

We conclude that the district court did not err in finding that the officers lacked probable cause to arrest Evans for rape. The victim did not provide a positive

identification of Evans sufficient to establish probable cause. Cf. Wilson v. Russo, 212 F.3d 781, 791-92 (3d Cir. 2000) (holding that victim's identification of robber from a photographic array established probable cause despite substantial exculpatory evidence); Clay v. Conlee, 815 F.2d 1164, 1168-69 (8th Cir. 1987) (holding that victim's identification of her attacker established probable cause where she had known the person she identified for fifteen years and stated she was "absolutely positive" he was her attacker). That Evans matched the victim's description of her attacker's height, build, and shoes may have provided some evidence to support a finding of probable cause to arrest. See Olinger v. Larson, 134 F.3d 1362, 1366 (8th Cir. 1998) (holding that probable cause was established where officers observed physical similarities between arrestee and robber in surveillance tape, and both wore a white hat); United States ex rel. Hollman v. Rundle, 461 F.2d 758, 759 & n.1 (3d Cir. 1972) (per curiam) (holding that probable cause was established where defendant was found at the scene of the crime one night after it occurred, and perfectly fit a description of the suspect's "race, height, weight, color of hair, type of hair styling, as well as the precise color of clothing"). But Evans's presence near the location of the rape twelve hours later, while waiting for a bus transfer, did not by itself incriminate him, and his response to police questioning was not of an incriminatory or suspicion-raising nature. Cf. Olinger, 134 F.3d at 1366 (arrestee acted suspiciously by leaving house and driving away without comment despite loud altercation between police and his family members nearby).

The fact that Evans did not have a scar on his abdomen or tattoos on his hands and neck constituted significant exculpatory evidence. These were the essentially defining features of the victim's identification of her attacker, and thus the subsequently developed discrepancies were so significant that, unlike in the cases the government cites, they constituted a significant obstacle to a finding of probable cause. Cf. Pasiewicz v. Lake Cty. Forest Pres. Dist., 270 F.3d 520, 522-25 (7th Cir. 2001) (holding that probable cause existed where arrestee "bore a fair resemblance" to description of suspect, and a witness discovered arrestee's identity after believing

she saw him a second time); <u>Brodnicki v. City of Omaha</u>, 75 F.3d 1261, 1265 (8th Cir. 1996) (holding that probable cause existed despite inconsistencies between arrestee and the nine-year-old witness's description of the suspect's height, weight, hair color, facial hair, and shirt color).

Moreover, the officers did not ask the victim to examine Evans's abdomen for the scar she described. Although the government argues that the officers could reasonably choose not to ask the victim to examine Evans because she was afraid of him or because he might have tried to intimidate her, we note that the victim herself suggested this course of action. Further, as recounted above, the officers did not closely examine Evans's hands and neck for tattoos, did not check whether Evans had a phone matching the number believed by the victim to be her attacker's, did not check whether Evans's keys would open the door to the apartment building where the rape occurred, and did not ask the manager of the apartment building whether anyone named Octavio or Octovi lived there. Although Sergeant Swoboda reasoned that these inquiries would not necessarily have exonerated Evans, they might have substantially influenced the probable cause determination, and to have conducted these inquiries would not have unduly hampered the performance of the officers' duties.

We affirm the district court's suppression of the firearm evidence on the ground that the officers lacked probable cause to arrest Evans. We express no opinion on the question whether a rape in fact occurred.

The order granting the motion to suppress is affirmed.

_____