# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 18-1852

———————————————

United States of America

*Plaintiff - Appellee*

v.

Zachary Scott Reed

*Defendant - Appellant*

——————

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

——————

Submitted: February 13, 2019
Filed: April 16, 2019

——————

Before SMITH, Chief Judge, BENTON and STRAS, Circuit Judges.

——————

BENTON, Circuit Judge.

Zachary Scott Reed conditionally pled guilty to possessing equipment having reasonable cause to believe it would be used to manufacture a controlled substance, in violation of 21 U.S.C. § 843(a)(6) and (d)(2). He reserved the right to appeal the

district court's[1] denial of his motion to suppress. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Around 6:00 p.m., Deputy Sheriff Patrick Boatman went to Reed's residence with an arrest warrant for Reed for unlawful use of a weapon. Reed's house has two entrances. Boatman testified he was "uncertain" which was the primary entrance. Between the driveway and house, Boatman saw several empty bottles of Heet fuel additive, a Coleman fuel can, and plastic tubing. Boatman had received information from "concerned citizens" that Reed was involved in producing methamphetamine. He recognized the items on Reed's property as precursors to manufacturing meth. Boatman knocked on the front door. No one answered. He left.

After midnight, he returned to try to execute the arrest warrant. This time, he went up a set of stairs leading to a deck and back door, instead of trying the front door. There were no barriers or fences blocking the path to the deck and back door. Once on the deck, he saw a glass beaker with a small amount of liquid. Based on his training, he believed the beaker suggested meth manufacturing. He texted a photograph of it to Narcotics Task Force Officer Scott G. Parish. No one answered the back door. Boatman left the residence.

The next morning, the Sheriff directed Deputy Vince Vanderfeltz to execute the arrest warrant. He told Vanderfeltz, "Deputy Boatman had gone out [to Reed's residence] earlier that same morning, and the night before, to execute that warrant, and that he had seen some items [and] that he wanted [Vanderfeltz] to return to Reed's residence to try to execute the warrant and also to secure the premises." He

---

[1] The Honorable Steven R. Bough, District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Matt J. Whitworth, United States Magistrate Judge for the Western District of Missouri.

also told Vanderfeltz to "look for specific items of interest" and "to see if there were still some items out there." Like Boatman, Vanderfeltz had received information that Reed was manufacturing meth.

Arriving at Reed's residence, Vanderfeltz saw a pickup truck in the driveway near the back door. Walking to the front door, he noticed the empty Heet bottles, the fuel can, and plastic tubing. No one answered the front door. He walked around to the back deck and knocked on the back door. No one responded. Vanderfeltz saw the glass beaker on the back deck. Believing the items he saw were consistent with meth production, he contacted Parish.

When Parish arrived, he knocked on the front and back doors. He saw the same items Boatman and Vanderfeltz had seen, including the glass beaker. Believing the beaker contained meth, he swabbed it with a field test. It tested positive for meth. Parish left to apply for a search warrant. Reed then walked out of the house and was arrested.

Parish had been investigating Reed for about a month. Members of the Sheriff's Office—including Deputies Boatman and Vanderfeltz—told him Reed was manufacturing meth. He received a similar tip from an anonymous citizen. Applying for the warrant, Parish swore:

> This investigation surrounds Zachary S. Reed . . . . Reed has been under investigation by the Lake Area Narcotics Enforcement Group for several months for manufacturing methamphetamine. During that time, I have received information pertaining to Reed has been [sic] manufacturing methamphetamine at his residence . . . from several members of the Osage County Sheriff's Office and a concerned citizen of Osage County, who wishes to remain anonymous.
>
> I was contacted by members of the Osage County Sheriff's Office advising me that during the course of their duties attempting to serve an outstanding warrant on Reed at his residence, items commonly used in

the production of methamphetamine were discarded near and around the residence in plain view. These items included; numerous bottles of HEET, camp fuel, and a chemistry glassware beaker, which field tested positive for the presence of methamphetamine.

The state judge issued the search warrant. Police recovered numerous items commonly used to manufacture meth. Reed pled guilty to possessing equipment having reasonable cause to believe it would be used to manufacture a controlled substance. However, he reserved the right to appeal the denial of his motion to suppress.

Reed moved to suppress the evidence found at his residence and requested a *Franks* hearing. The magistrate judge denied a *Franks* hearing and recommended denying the suppression motion, reasoning that Boatman and Vanderfeltz did not violate the Fourth Amendment and, even if they did, the good-faith exception applied. ***United States v. Reed***, 2017 WL 4401647 (W.D. Mo. Sept. 8, 2017). Adopting the report and recommendation, the district court denied the motions to suppress. ***United States v. Reed***, 2017 WL 4399278 (W.D. Mo. Oct. 3, 2017). Reed appeals.

## II.

Reed argues the warrant application contained information obtained in violation of the Fourth Amendment and omitted relevant information in reckless disregard of the truth. He claims that without this information, the warrant lacks probable cause. On appeal from the denial of a motion to suppress, this court reviews the district court's factual findings for clear error and application of law de novo. ***United States v. Rodriguez***, 834 F.3d 937, 940 (8th Cir. 2016).

## A.

Reed claims that the officers violated his Fourth Amendment right against unreasonable searches by going onto his back deck. He contends that because the

-4-

glass beaker was obtained illegally, it should be excluded from the warrant application. "When an otherwise valid search warrant is based upon evidence obtained in a prior warrantless search that violated the Fourth Amendment, it is the exclusionary rule that prohibits use of this derivative evidence to establish the probable cause needed to obtain a valid warrant." *United States v. Davis*, 760 F.3d 901, 904 (8th Cir. 2014), *citing United States v. Leon*, 468 U.S. 897, 918 (1984); *and Segura v. United States*, 468 U.S. 796, 813–15 (1984).

The officers did not have a search warrant when they saw the glass beaker. The district court applied the plain-view exception, which "allows law enforcement officers to seize evidence without a warrant when the initial intrusion is lawful, the discovery of the evidence is inadvertent, and the incriminating nature of the evidence is immediately apparent." *United States v. Raines*, 243 F.3d 419, 422 (8th Cir. 2001). Reed only challenges the first requirement. He does not challenge the swabbing of the beaker. The issue is whether the officers were lawfully present on the back deck when they saw the beaker.

The prohibition against unreasonable searches extends to the curtilage of a house. *Oliver v. United States*, 466 U.S. 170, 180 (1984). This can include backyards and decks. *See, e.g.*, *United States v. Wells*, 648 F.3d 671, 677–79 (8th Cir. 2011). Officers executing an arrest warrant, however, may "enter the residence of the person named in the warrant" if they "have a reasonable belief that the suspect resides at and is currently present at the dwelling." *United States v. Lloyd*, 396 F.3d 948, 952 (8th Cir. 2005), *citing Payton v. New York*, 445 U.S. 573, 602–03 (1980). "Whether the officers had reasonable belief is based upon the totality of the circumstances known to the officers prior to entry." *United States v. Ford*, 888 F.3d 922, 926 (8th Cir. 2018).

Reed argues Boatman's second visit was invalid because he did not try the front door and had no reasonable belief anyone was inside the house. There were no

lights or other indicators anyone was home. The record is silent whether Reed's truck was in the driveway. Assuming, without deciding, that Boatman's second visit violated the Fourth Amendment, the glass beaker need not be excluded from the search warrant.

"Evidence should not be excluded . . . based on a constitutional violation unless the illegality is at least a but-for cause of obtaining the evidence." ***United States v. Olivera-Mendez***, 484 F.3d 505, 511 (8th Cir. 2007), *citing* ***Hudson v. Michigan***, 547 U.S. 586, 592 (2006); *and* ***Segura***, 468 U.S. at 815. Reed "bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence." ***United States v. Riesselman***, 646 F.3d 1072, 1079 (8th Cir. 2011).

Vanderfeltz went to Reed's residence to execute an arrest warrant. He testified it was "customary" for officers to try the front and back door when executing an arrest warrant. Thus, regardless of Boatman's second visit, Vanderfeltz would have gone to the back deck and seen the beaker. Boatman's entry did not lead to Vanderfeltz's discovery of the beaker and was not a but-for cause of obtaining the evidence and using it in the warrant application. *See* ***Olivera-Mendez***, 484 F.3d at 511 (illegal detention not a but-for cause of finding drugs because dog sniff "would have occurred with or without the" illegal detention).

At oral argument, Reed's counsel stressed that Vanderfeltz's search was "tainted" by Boatman's illegal entry. Boatman never told Vanderfeltz what he saw on Reed's property. The Sheriff told Vanderfeltz only that Boatman "had seen some items." He did not tell Vanderfeltz about the beaker, or instruct him to go to the back deck. Because there is no evidence Vanderfeltz knew about the beaker, his search was not tainted by Boatman's earlier entry. Boatman's acts do not require exclusion of the beaker from the warrant application. *See* ***Segura***, 468 U.S. at 815 ("Suppression is not justified unless 'the challenged evidence is in some sense the

-6-

product of illegal governmental activity.'" (*quoting United States v. Crews*, 445 U.S. 463, 471 (1980))).

Vanderfeltz was lawfully present on the back deck when he saw the beaker. When he arrived to execute the arrest warrant early in the morning, Reed's truck was in the driveway. By the totality of circumstances, he had a reasonable belief Reed resided there and was inside the home. *See United States v. Powell*, 379 F.3d 520, 524 (8th Cir. 2004) ("It was not unreasonable for the officers to believe that [the suspect] would be at home during the early morning hours."); *Raines*, 243 F.3d at 421 (officers had a reasonable belief occupants were in the backyard because it was a "pleasant summer evening" and there were several cars parked in the driveway). *See also United States v. Gonzalez*, 441 Fed. Appx. 404, 407 (8th Cir. 2011) (sufficient indication someone was home where two cars were parked in the driveway). Vanderfeltz's presence on Reed's back deck was lawful. The plain-view exception applies. *See Raines*, 243 F.3d at 422. The district court did not err in finding the glass beaker could be used in the warrant affidavit.

B.

Reed contends the district court erred in denying his suppression motion because the warrant affidavit omitted, in reckless disregard of the truth, information about the unnamed individuals' hearsay statements and the presence of other auto-repair items in Reed's yard. To prevail on a challenge to a warrant affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978), for omissions of fact, Reed must show: "(1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015). Reckless disregard requires showing that the officer "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the

information." *Id.* Recklessness can be inferred from the omission "when the material omitted would have been clearly critical to the finding of probable cause." *Id.*

Reed has not satisfied his burden under *Franks*. The affidavit said that officers from the Sheriff's Office and an anonymous citizen passed along information that Reed was manufacturing meth. It did not say how they learned this or give details about the citizen's identity or reliability. An affiant like Parish, however, can rely on statements from other officers and informants to establish probable cause, particularly because here, that information was corroborated by the items at Reed's house. *See United States v. Ortega*, 854 F.3d 818, 829 (5th Cir. 2017) ("[A]n affiant officer can rely on information from another officer to establish probable cause in an affidavit."); *United States v. Buchanan*, 574 F.3d 554, 562 (8th Cir. 2009) (an informant can be reliable "if the information he or she supplies is at least partially corroborated by other sources"). Nothing in the record indicates Parish entertained serious doubts or had obvious reasons to doubt the accuracy of these statements. *See Conant*, 799 F.3d at 1200. Similarly, the omission of other auto-repair items was not in reckless disregard of the truth. That Reed had other items in his yard is not "clearly critical" to the finding of probable cause due to the other evidence in the warrant application, like the beaker. Because Reed has not shown that Parish omitted information in reckless disregard of the truth, the district court properly found no *Franks* violation.

The district court also properly rejected Reed's argument that Parish falsely stated that the beaker was in plain view. Vanderfeltz and Parish were lawfully on Reed's back deck when they saw the beaker. Even if Boatman lacked a reasonable belief Reed was inside the house, nothing in the record indicates Parish had any information suggesting Boatman illegally entered the back deck.

C.

Reed argues the warrant lacked probable cause. Reviewing a probable cause finding, this court accords "substantial deference to the finding of an issuing judicial

officer." ***Buchanan***, 574 F.3d at 561. Probable cause exists when, viewing the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." ***Illinois v. Gates***, 462 U.S. 213, 230, 238 (1983).

In the warrant application, Parish stated he had received information from other officers and an anonymous citizen that Reed was manufacturing meth. His affidavit does not provide the basis for these allegations. However, informants may be considered reliable when they supply information that is (at least) partly corroborated by other sources. ***Buchanan***, 574 F.3d at 562. The information here was corroborated by the Heet cans, Coleman fuel can, and beaker on Reed's property. Because the information provided was sufficiently corroborative, it was reliable. By the totality of circumstances, the warrant application had sufficient information to establish probable cause.

Since there is no basis to exclude the evidence that the officers obtained by the search warrant, this court need not reach the district court's application of the good-faith exception.

* * * * * * *

The judgment is affirmed.

_____