# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1365
_____

James Hartman; Ryan Hartman

*Plaintiffs - Appellants*

v.

Beary Bowles, Detective

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 16, 2021
Filed: July 5, 2022
[Published]

_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

_____

PER CURIAM.

Does a detective violate a clearly established constitutional right by omitting information from a warrant application that he does not actually know, even if the reason is his own reckless investigation? The answer is no, which means he is entitled to qualified immunity.

I.

Someone shot a St. Louis fire captain and his passenger in St. Louis.  The fire captain described the shooter three separate times as a "black male," once on a 911 call right after the shooting, again when responding officers arrived on the scene, and one more time to an officer at the hospital.

None were to Detective Beary Bowles, who investigated the case.  He began to focus his attention on two brothers, James and Ryan Hartman.  Nearby cameras had captured them driving in the area and then stopping shortly before the shooting.  Based on this evidence, Detective Bowles requested multiple search and arrest warrants.  There was just one problem: the brothers are white.  And the paperwork he submitted left out the fact that the fire captain had described the shooter as black.

The brothers were eventually released when it became clear that neither was the shooter.  Now they are suing Detective Bowles, who they say violated the Fourth Amendment by leaving out the fire captain's description.  *See* 42 U.S.C. § 1983; *see also* U.S. Const. amend. IV.  The district court[1] dismissed for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).[2]

---

[1]The Honorable Stephen R. Clark, United States District Judge for the Eastern District of Missouri.

[2]It makes no difference whether "the district court addressed the merits of the qualified immunity issue." *Cox v. Sugg*, 484 F.3d 1062, 1065 (8th Cir. 2007) (citing *Jones v. Coonce*, 7 F.3d 1359, 1365 (8th Cir. 1993)).  For interlocutory orders, we are limited to what the district court actually decided under the "limited exception to the final judgment rule" in qualified-immunity cases.  *See id.*  But for "final decisions" like this one, a different rule applies: we can affirm on any ground supported by the record.  28 U.S.C. § 1291; *see Hamner v. Burls*, 937 F.3d 1171, 1176 (8th Cir. 2019).

"We review the grant of a motion to dismiss de novo." *Far East Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022); *Anderson ex. rel. Anderson v. City of Minneapolis*, 934 F.3d 876, 880 (8th Cir. 2019). Our review "is limited to the facts alleged in the . . . [c]omplaint, which we accept as true and view most favorably to the plaintiffs." *Stanley v. Finnegan*, 899 F.3d 623, 625 (8th Cir. 2018).

As relevant here, the complaint contained two claims—one for the arrests and the other for the searches—but the analysis for both is basically the same. Generally, getting a warrant from a "neutral magistrate" is a "clear[] indication that [an] officer[] [has] acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). But not always. *See id.* at 547 (explaining that having a warrant does not "end the inquiry"). Intentionally or recklessly omitting key facts can also lead to a Fourth Amendment violation. *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

To succeed on this theory, the Hartmans had to show that Detective Bowles (1) omitted facts "with the *intent to make, or in reckless disregard of whether they make*, the affidavit misleading" and (2) that "the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *United States v. Reed*, 921 F.3d 751, 756 (8th Cir. 2019) (emphasis added) (citation omitted). What is undisputed, at least at this point, is that Detective Bowles did not actually know that the fire captain had described the shooter as black.[3] So the question is

---

[3]The dissent disagrees, but it is reading more into the complaint than the Hartmans do. When asked at oral argument about what they pleaded in the complaint, counsel said, "I don't believe the complaint pleads that [Detective Bowles] did know" about the shooter's race. Oral Arg. at 5:31–5:46. Then he went on to say that "what [Detective Bowles] knew exactly at the time he filed the statements is unclear," but that the Hartmans did not think "that he had interviewed th[e] officers" who heard the fire captain's description. *Id.* at 5:55–6:07; *see also id.* at 11:48–11:56 (stating that Detective Bowles "didn't listen to the 911 tapes" or "talk

whether his failure to know that fact—allegedly due to a reckless investigation—can give rise to a clearly established *Franks* violation. *See Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc).

The cases say no. As the Fourth Circuit has put it, "[a]n officer who does not personally know information cannot intentionally or recklessly omit it." *United States v. Pulley*, 987 F.3d 370, 379 (4th Cir. 2021); *see also United States v. Bausby*, 720 F.3d 652, 657–58 (8th Cir. 2013) (holding that the omission of information not known to the officer did not give rise to a *Franks* violation); *United States v. Coleman*, 349 F.3d 1077, 1084 n.6 (8th Cir. 2003) (concluding that there was no *Franks* violation even though there were "a number of omissions," including a witness description of a suspect as "part Hispanic," because "there [was] no proof that [the officer] ever knew of the existence of the omission"). For that reason, "[w]hat the officer-affiant *should* have known does not matter." *Pulley*, 987 F.3d at 377.

For their part, the Hartmans cannot identify a single case that holds otherwise. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (requiring the plaintiff to identify a case in which "an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment"). Of those they cite, many are not *Franks* cases at all. *See Sharp v. Cnty. of Orange*, 871 F.3d 901 (9th Cir. 2017); *Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999); *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252 (10th Cir. 1998); *Tillman v. Coley*, 886 F.2d 317 (11th Cir. 1989). Others were not even on the books when Detective Bowles acted. *See Bell v. Neukirch*, 979 F.3d 594 (8th Cir. 2020); *United States v. Evans*, 851 F.3d 830 (8th Cir. 2017). The

to the officers who responded to the scene"). Finally, when asked point blank about whether Detective Bowles "kn[e]w that the victim[] . . . describ[ed] the suspect as black," he candidly responded, "I believe that he did not know of those statements at the time." *Id.* at 6:20–6:37. We take counsel at his word. *Cf. United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (explaining that "our adversarial system . . . . is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief" (quotation marks and brackets omitted)).

bottom line is that, given there are no cases supporting the Hartmans' position, Detective Bowles was not on "fair notice that [his] conduct was unlawful."[4] *Brosseau v. Haugen*, 543 U.S. 194, 198, 200 n.4 (2004) (per curiam).

## III.

We accordingly affirm the judgment of the district court.

SHEPHERD, Circuit Judge, dissenting.

The majority finds that it "is undisputed . . . that Detective Bowles did not actually know that the fire captain had described the shooter as black." I disagree. In my view, affording the amended complaint a fair reading, appellants allege that before Detective Bowles prepared applications for the arrest of the appellants and for the search warrants, he was aware that immediately after the shooting, the victim had identified the shooter as black. Accordingly, I dissent.

The fire captain described the shooter as a "black male" three separate times: once right after the shooting, again when officers arrived on the scene, and one more time at the hospital. In stating that it is undisputed that Detective Bowles did not know of the fire captain's statements describing the shooter as black, the majority relies on a statement of appellants' counsel at oral argument. However, counsel's statement is clearly qualified: "Detective Bowles did not know of the [captain's] statements *at the time*." Indeed, Detective Bowles did not know of the fire captain's descriptions *at the time* that they were conveyed to responding officers. But, according to the allegations of the amended complaint, which we must accept as true, he did learn of the fire captain's description that the shooter was black the next day and before he applied to the court for the warrants. See Glick v. W. Power Sports, Inc., 944 F.3d 714, 717 (8th Cir. 2019) (explaining that, at this stage, we

---

[4]For this same reason, the district court did not abuse its discretion when it denied the Hartmans' motion for reconsideration. *See Schoffstall v. Henderson*, 223 F.3d 818, 827 (8th Cir. 2000).

must accept as true the complaint's factual allegations and view those allegations in the light most favorable to the nonmoving party).

Appellants' amended complaint alleges that when deposed, Detective Bowles stated that he spoke to the fire captain the next morning at the hospital and the fire captain stated that: *he had believed that the shooter was a black male because he had on baggy pants*; *he had only identified the shooter as black by his clothing and "body type"*; and he *"doubted his prior certainty about the skin color of the shooter."* R. Doc. 10-1, at 11-12. Viewing these allegations in the light most favorable to appellants, as we must, appellants have alleged that the morning after the shooting, Detective Bowles learned that, immediately after the shooting, the fire captain had identified his assailant as black. What is undisputed is the fact that this critical and basic information was omitted by Detective Bowles from the applications for search and arrest warrants which he prepared and submitted to the court.

To set forth a prima facie <u>Franks</u>[5] case capable of defeating a motion to dismiss, appellants needed to demonstrate: "(1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." <u>United States v. Reed</u>, 921 F.3d 751, 756 (8th Cir. 2019) (citation omitted). "Reckless disregard requires showing that the officer 'must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information.'" <u>Id.</u> (citation omitted); <u>see also</u> <u>Engesser v. Fox</u>, 993 F.3d 626, 630 n.3 (8th Cir. 2021) ("As we have explained, '*purposefully* ignor[ing] evidence suggesting the defendant's innocence,' is a 'tell-tale sign[ ] of a *reckless* investigation.'" (alterations in original) (citations omitted)); <u>Akins v. Epperly</u>, 588 F.3d 1178, 1184 (8th Cir. 2009) (considering due process claim for inadequate investigation and explaining that

_____

[5]<u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

"purposefully ignor[ing] evidence suggesting the defendant's innocence" indicates a reckless failure to investigate).

Based on the bedside conversation between Detective Bowles and the fire captain, as alleged in appellants' amended complaint, it is apparent that Detective Bowles at least "had obvious reasons to doubt the accuracy of the information" contained in his warrant applications and had in his possession evidence suggesting appellants' innocence.

Under the well-pleaded allegations of the amended complaint, Detective Bowles did not conduct the most basic investigation before presenting probable cause affidavits to the court seeking the search and arrest of appellants: he did not listen to the 911 calls made by the fire captain and a witness who described the shooter as being a black male; he did not talk to the officers who responded to the scene or review their reports in which they described the shooter as being a black male; and he did not enhance the surveillance footage from the night of the shooting until two years later, footage which showed that the shooter did not drive an Infiniti. Further, he disregarded the fact that the fire captain did not recognize either of the appellants as the shooter from a lineup which contained only their photographs. As a result of Detective Bowles's less-than-basic investigation and his ignoring of evidence suggesting appellants' innocence, appellants spent more than a year either incarcerated or on house arrest for a crime they did not commit.

For these reasons, the motion to dismiss should be denied, and I would reverse the judgment of the district court.

_____