# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-4028

_____

United States of America

*Plaintiff - Appellant*

v.

Justin William Thabit

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: September 23, 2022
Filed: January 5, 2023

_____

Before SMITH, Chief Judge, KELLY and GRASZ, Circuit Judges.

_____

SMITH, Chief Judge.

Justin Thabit was arrested pursuant to an absconder warrant for failing to report to his supervising parole officer. Law enforcement received a tip that Thabit was staying at a certain residence and arrested him in the vicinity of the residence. Law enforcement then executed a warrantless search of that nearby residence. Thabit

moved to suppress the evidence obtained during the search. The district court[1] granted the motion to suppress, finding that law enforcement did not have reasonable suspicion that Thabit lived at the residence. The government appeals from the order granting the motion to suppress, arguing that law enforcement had probable cause or at least reasonable suspicion that Thabit resided at the place searched. We affirm.

## I. *Background*

In January 2019, Justin Thabit was released on parole from the Arkansas Department of Corrections. As a condition of his parole, he executed a warrantless search waiver that included the following language:

> I agree to allow any Arkansas Community Correction officer, or any certified law enforcement officer, to conduct a warrantless search of my person, place of residence, or motor vehicle at any time, day or night, whenever requested by the Arkansas Community Correction officer, or certified law enforcement officer.

R. Doc. 42-2. Thabit listed his mother's address as his residence on his documentation to the Arkansas Department of Corrections.

Thabit missed two visits with his parole officer in January and March. On March 14, 2019, law enforcement conducted a home visit to his mother's residence. His mother reported that he had a room at the house, but that he had not spent the night there for several weeks. An absconder warrant was issued the next day for his arrest.

During a meeting prior to a "warrant roundup," R. Doc. 52, at 41, Pulaski County Sheriff's Office Investigator Cody Martin told other law enforcement that he

---

[1]The Honorable D. Price Marshall, United States District Judge for the Eastern District of Arkansas.

knew of "a potential address he could be staying at," *id.* at 65. He later testified that he had received a tip "maybe a week prior" from a confidential informant (CI) who had told him that Thabit was staying at a residence with an unidentified female and was selling narcotics from the residence. *Id.* at 62. The CI had worked with Martin before, and Martin considered him reliable. He could not recall how the tip came to him, and he made no documentation of the tip.

On June 18, 2019, law enforcement arrived at a residence belonging to Stacia Frase and observed Thabit leaving the residence in his car. They arrested Thabit pursuant to the absconder warrant. Law enforcement then entered Frase's home, conducted a full search of the premises, and seized firearms and drugs. Thabit was charged with being a felon in possession of a firearm, possessing an unregistered firearm, possessing a firearm in furtherance of a drug trafficking crime, and possession with intent to distribute methamphetamine.

Thabit moved to suppress the evidence seized at the residence. The district court granted Thabit's motion because the officers at Frase's residence lacked reasonable suspicion that he was residing there. Prior to the suppression hearing, the district court applied a reasonable suspicion standard to determine whether a parolee or probationer lives at a particular place. The court noted, however, that the issue of the proper standard had not been squarely addressed by the Eighth Circuit, but was supported by *United States v. Knights*, 534 U.S. 112, 118–21 (2001); *United States v. Lucas*, 499 F.3d 769, 778–79 (8th Cir. 2007) (en banc); and *United States v. Taylor*, 482 F.3d 315, 318–19 (5th Cir. 2007).

The government has appealed the grant of the motion to suppress, arguing that law enforcement had probable cause, or at least reasonable suspicion, to believe that Thabit resided there at the time of the search. Thabit argues on appeal, as he did at the suppression hearing, that the correct standard is not reasonable suspicion but probable

cause, but that law enforcement's level of suspicion did not even rise to reasonable suspicion.

## II. *Discussion*

The existence of reasonable suspicion is a mixed question of law and fact that appellate courts review de novo. *United States v. Gregory*, 302 F.3d 805, 809 (8th Cir. 2002). The same appellate review standard applies to determinations of probable cause. *United States v. Williams*, 616 F.3d 760, 764 (8th Cir. 2010). "When reviewing a district court's grant of a motion to suppress, we review its factual findings for clear error and its application of law de novo." *United States v. Andrews*, 454 F.3d 919, 921 (8th Cir. 2006).

## A. *Correct Standard for the Search*

As noted by the district court, a central issue is the correct standard for determining that a certain place is a parolee's "residence." R. Doc. 72, at 1. If the place is the parolee's residence as opposed to some other person's, then a warrantless search waiver in the parolee's release conditions would apply. Our court has not ruled on this specific issue but has dealt with similar circumstances. Additionally, binding precedent from the Supreme Court has tangentially considered the principles that inform our decision here.

First, this court has considered the correct level of suspicion required prior to entering a residence to serve an arrest warrant. *United States v. Reed*, 921 F.3d 751 (8th Cir. 2019). In *Reed*, we stated, "Officers executing an arrest warrant, however, may enter the residence of the person named in the warrant if they have a reasonable belief that the suspect resides at and is currently present at the dwelling." *Id.* at 755 (internal quotation marks omitted). Reasonable belief is also the standard we use when determining whether an officer properly entered a residence without a warrant as a community caretaker. *United States v. Quezada*, 448 F.3d 1005, 1007 (8th Cir. 2006).

Second, this court has considered the appropriate standard for suspecting that an escapee was at a particular location before entering to serve an arrest warrant. In *Lucas*, both the majority and dissenting opinions agreed that the correct standard to be applied was reasonable suspicion. 499 F.3d at 778, 787 n.11. Lucas was an escapee who was arrested pursuant to a valid administrative warrant. *Id.* at 778. However, reasonable cause that Lucas was present at the residence only gave law enforcement authority to enter the premises to arrest Lucas pursuant to the warrant. *Id*. at 779. The court did not decide whether that suspicion would have given law enforcement authority to search the residence. *Id*.

Third, the Supreme Court has held that parolees have diminished liberties and that the State has significant interests in parolee supervision and recidivism prevention. *Samson v. California*, 547 U.S. 843, 850–53 (2006). *Samson* built on the earlier Supreme Court decisions of *Knights* and *Griffin v. Wisconsin*, 483 U.S. 868 (1987), which both dealt with the Fourth Amendment rights of probationers. *Samson*, 547 U.S. at 848–850. *Samson* ultimately held that a suspicionless search of a parolee pursuant to a California statute was constitutional. *Id*. at 846. It relied on *Knights* balancing test to determine whether the State's interests related to supervised release outweighed any expectation of privacy of the parolee. *Id.* at 848–50. The *Samson* court held that they did. These cases placed probationers and parolees on a "continuum of state-imposed punishments" with parolees having fewer rights than probationers. *Id.* at 850 (internal quotation marks omitted). The *Samson*, *Knights*, and *Griffin* decisions explain the relevant privacy interests of parolees and probationers and the interests the State has in carrying out supervised release programs.

Lastly, two district courts in our circuit have considered the question and reached different results. In *United States v. Toney*, a parolee executed a warrantless search waiver and listed his mother's address as his place of residence. He also had the address listed on his driver's license and independently listed in law

-5-

enforcement's reporting system. No. 4:20-cv-00271-02KGB, 2022 WL 2651621, at *1–2 (E.D. Ark. July 8, 2022). The court in *Toney* held that it was "objectively reasonable" for law enforcement to believe that the parolee resided at that particular location. *Id.* at *8. Applying a different standard, the district court in *United States v. Alexander*, No. 4:17-cr-22-DPM (E.D. Ark. May 12, 2021), applied a reasonable suspicion standard. *See* R. Doc. 45, at 1–2. *Alexander* relied on the *Lucas* case from this circuit, as well as the analogous persuasive precedent of *United States v. Taylor*, 482 F.3d 315, 318–19 (5th Cir. 2007).

Only the Ninth Circuit[2] has definitively ruled on the level of suspicion needed to determine that a parolee resides at a certain place and thus subject it to a warrantless search. *Motley v. Parks*, 432 F.3d 1072, 1079 (9th Cir. 2005) (en banc) *overruled in part on other grounds, United States v. King*, 687 F.3d 1189 (9th Cir. 2008). The court in that case reasoned

> [g]enerally, a condition of parole that permits warrantless searches provides officers with the limited authority to enter and search a house where the parolee resides, even if others also reside there. But they have to be reasonably sure that they are at the right house. Nothing in the law

---

[2]While both the Third and Sixth Circuits have considered the issue, neither has set a standard. In *United States v. Payne*, the Sixth Circuit concluded that, "[b]ecause we agree that probable cause existed, it is not necessary to decide whether reasonable suspicion connecting a parolee or probationer to the premises to be searched would be sufficient under the balancing called for by *Knights*." 588 F. App'x. 427, 433 (6th Cir. 2014) (unpublished). The Third Circuit has required probable cause to determine whether a probationer resides at a certain location. *United States v. Manuel*, 342 F. App'x. 844, 848 (3d Cir. 2009) (unpublished). However, they expressly declined to address the question as it applied to parolees in *United States v. Crutchfield*, 444 F. App'x. 526, 528 (3d Cir. 2011) (unpublished) ("We need not decide whether probable cause is required because we conclude that the agents did possess probable cause . . . .").

justifies the entry into and search of a third person's house to search for the parolee.

*Id.* at 1079. The *Motley* court also relied on previous Ninth Circuit precedent "conclud[ing] that when it came to whether a person lives at a particular residence, the 'reason to believe' or 'reasonable belief' standard 'should be read to entail the same protection and reasonableness inherent in probable cause.'" *Id*. at 1080 (first quoting *United States v. Gorman*, 314 F.3d 1105, 1111–15 (9th Cir. 2002), then citing *Watts v. Cnty. of Sacramento*, 256 F.3d 886, 890 (9th Cir. 2001); *United States v. Harper*, 928 F.2d 894, 896 (9th Cir. 1991)).

We have not decided whether the reasonable belief standard amounts to something akin to probable cause, reasonable suspicion, or something else entirely. Instead, we have held that "[w]hether the officers had reasonable belief is based upon the totality of the circumstances known to the officers prior to entry." *Reed*, 921 F.3d at 755 (quoting *United States v. Ford*, 888 F.3d 922, 926 (8th Cir. 2018)).

Our sister circuits are split as to the definition of "reasonable belief." The Fifth, Sixth, Ninth, and Eleventh Circuits have held that reasonable belief amounts to probable cause. *See United States v. Hardin*, 539 F.3d 404, 416 n.6 (6th Cir. 2008); *United States v. Barrera*, 464 F.3d 496, 501 (5th Cir. 2006); *United States v. Gorman*, 314 F.3d 1105, 1111 (9th Cir. 2002); *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995). In contrast, the D.C., Tenth, and Second Circuits have held that it requires something less. *See United States v. Thomas*, 429 F.3d 282, 286 (D.C. Cir. 2005); *Valdez v. McPheters*, 172 F.3d 1220, 1227 n.5 (10th Cir. 1999); *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir. 1995). We decline to import the reasonable belief standard to this issue, as the difference between the arrest in *Reed* and the full search of the residence in this case is constitutionally significant. Accordingly, we opt not to opine on the proper definition of "reasonable belief" in this case.

"Probable cause exists under the Fourth Amendment when a police officer has reasonably trustworthy information that is sufficient to lead a person of reasonable caution to believe that the suspect has committed or is committing a crime." *Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022) (internal quotation marks omitted). In this context, probable cause would require a person of reasonable caution to believe the parolee resided at a certain location prior to a search. Probable cause is assessed based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). It "is a fluid concept—turning on the assessment of probabilities in particular contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. It means more than bare suspicion, less than necessary for conviction. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (per curiam).

"Reasonable suspicion exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *Schoettle v. Jefferson Cnty.*, 788 F.3d 855, 859 (8th Cir. 2015) (internal quotation marks omitted). Reasonable suspicion is determined "from the point of view of trained law enforcement officers based on the totality of the circumstances known to the officers at the relevant time." *United States v. Zamora-Lopez*, 685 F.3d 787, 790 (8th Cir. 2012). The facts are to be determined collectively rather than individually. *United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011). Probable cause is a more demanding standard than reasonable suspicion. "[R]easonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990).

We hold that probable cause is the appropriate standard in a case involving a dwelling of a third party. An officer must have probable cause to believe a dwelling is the residence of a parolee in order to initiate a warrantless search of a residence not known to be the home of a parolee.

Our holding today is based on three reasons. First, as the Ninth Circuit reasoned in *Motley*, the potential for violations of the constitutional rights of third parties necessitates a more rigorous standard than reasonable suspicion. *Motley*, 432 F.3d at 1079. Second, while the State certainly has important interests in the supervision of parolees and the prevention of recidivism, *see Samson*, 547 U.S. at 853, the narrow application of this standard is not a burdensomely high bar for law enforcement to meet. Because parolees remain under supervision, law enforcement should possess substantial information needed to locate them, including the address listed on their conditional release forms and information relevant to their underlying arrest and detention. Third, the waiver signed by parolees allowing searches of their residence nullifies any need for law enforcement to develop a *reason* to search. *Id.* at 846. They simply must possess probable cause that the parolee actually resides at the search location.

### B. *Level of Suspicion Possessed by Law Enforcement*

Did the officers in this case have probable cause to believe that Thabit was residing at Frase's home at the time of the search? We conclude that they did not. As the warrantless search waiver states, law enforcement was entitled to search Thabit's residence. It needed, however, probable cause that the location to be searched was indeed his residence. Thabit was seen physically present nearby. Proximity to a dwelling, though, does not suffice to establish residence.

Evidence that tends to prove residence can be derived from anonymous tips, information from confidential informants, conversations with people who know the parolee, or police records. *See United States v. Clayton*, 210 F.3d 841, 842 (8th Cir. 2000) (anonymous tip); *United States v. Risse*, 83 F.3d 212, 214–15 (8th Cir. 1996) (conversations with parolee's girlfriend and confidential informant). Tips from a confidential informant or an otherwise anonymous source can serve as the basis for probable cause if they are corroborated. *See United States v. Koons*, 300 F.3d 985, 991 (8th Cir. 2002) ("The fact that numerous stems of marijuana plant material were

in Koons' trash corroborated the tip that he was dealing drugs and increased the credibility of the informant."); *United States v. Leppert*, 408 F.3d 1039, 1041 (8th Cir. 2005) ("Here the CI gave reliable information in the past that resulted in numerous successful prosecutions, and some of Mr. Gretillat's statements were corroborated by statements of the reliable CI."); *United States v. Winarske*, 715 F.3d 1063, 1067–68 (8th Cir. 2013) (holding probable cause existed where a reliable informant had a track record, had their statements corroborated, and gave predictive information).

The government asserts it provided evidence sufficient to establish probable cause based on the CI's tip, citing our decision in *United States v. Gabrio*, 295 F.3d 880 (8th Cir. 2002). There, police relied on a confidential informant to support probable cause for a search warrant. *Id.* at 884. No part of the tip had been corroborated prior to the issuance of the search warrant. But the CI had given reliable information on two prior occasions, had returned stolen items to police, and was present at the defendant's residence and had seen evidence of the crime. *Id.* at 882. He also provided the tip in person, as opposed to over the phone, which the court found important because law enforcement had the opportunity to assess his credibility. *Id.*

Here, the informant's tip had far fewer indicia of reliability to support probable cause without corroboration. True, the CI had given reliable information at least once before, but the record contains no details as to the basis of the tip about Thabit. In response to being questioned about how he received the tip, Officer Martin responded, "Text, phonecall, in person. It was something like that." R. Doc. 52, at 74. Corroborative evidence like that in *Gabrio* is lacking.

-10-

### III. *Conclusion*

Because law enforcement needed probable cause that Thabit was residing at Frase's home in order to execute the warrantless search, we hold that the district court did not err in granting Thabit's motion to suppress.

Accordingly, we affirm.

_____